

**U.S. Department of Transportation**

Office of the Secretary
Of Transportation

Departmental Office of Civil Rights
1200 New Jersey Avenue, S.E., W76-401
Washington, DC 20590

*Sent via email*

February 5, 2026

Eddy N. Besse
146-11 225th Street Springfield
Gardens, NY 11413
ebesse96cyahoo.com

Dear Eddy N. Besse:

The U.S. Department of Transportation, Departmental Office of Civil Rights, has reviewed your correspondence dated December 16, 2025. We are referring this matter to the U.S. Equal Employment Opportunity Commission for review and appropriate action. Please contact their office for assistance.

Arlene Nieto, Acting Director
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
https://www.eeoc.gov/field-office

Thank you for bringing this matter to our attention.

Sincerely,



Jhoset Burgos Rodríguez
Civil Rights Analyst
Departmental Office of Civil Rights

cc: U.S. Equal Employment Opportunity Commission

REC'D IN PRO SE OFFICE
AUG 7 '26 AM11:08

# EEOC Supplemental Submission – Referral from U.S. Department of Transportation

Charging Party: Eddy N. Besse

Email: ebesse96@yahoo.com

Phone: 516-325-0999

Former Employer: Amtrak

EEOC Charge Number: [520-2026-01346]


To Whom It May Concern,

I am submitting this letter as a supplemental filing in support of my pending EEOC charge.

On February 5, 2026, I received written correspondence from the U.S. Department of Transportation, Departmental Office of Civil Rights, advising that after review, my complaint falls outside the Department of Transportation's jurisdiction and has therefore been referred to the U.S. Equal Employment Opportunity Commission for review and appropriate action.

I am attaching the DOT referral letter/email to this submission for the record.

This referral confirms that the issues raised in my complaint—specifically disability discrimination, failure to engage in the interactive accommodation process, retaliation, and wrongful termination—are properly within the EEOC's jurisdiction under the Americans with Disabilities Act and related civil rights statutes.

As detailed in my original charge and supporting documentation:

- I disclosed a medically diagnosed disability (severe sleep apnea) to management in writing.

- No accommodation process was initiated, and my disclosures were ignored.

- Shortly after disclosure and after engaging in protected safety reporting activity, I was subjected to sudden and inconsistent disciplinary actions.

- These actions culminated in my termination, despite a previously clean disciplinary record.

I respectfully request that this referral and the attached correspondence be added to my EEOC case file and considered as part of the ongoing investigation.

Thank you for your time and attention to this matter.

Sincerely,

Eddy N. Besse

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 520-2026-01346 |
| New York State Division Of Human Rights | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Mr. Eddy N. Besse

Phone No.: (516) 325-0999

Year of Birth:

Mailing Address: 146-11 225th St Fl 2

Springfield Gardens, NY 11413

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: AMTRAK

No. Employees, Members: Under 15 Employees

Phone No.:

Mailing Address: 38-38 43rd st

Long Is City, NY 11101, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 09/17/2025

Latest: 09/17/2025

THE PARTICULARS ARE:

I am a Male with a qualifying disability who has worked at the above-mentioned entity until I was terminated on September 25, 2025.

I believe I was discriminated and retaliated against because of my disability.

Specifically, In October 2024, I was medically diagnosed with sleep apnea. On April 1, 2025, I disclosed my medically documented sleep apnea to management through email communication sent on April 1, 2025, with supporting medical documentation attached and distributed to multiple management personnel. No member of management acknowledged the disclosure, initiated discussion regarding accommodations, or engaged in the ADA interactive process. Following this disclosure, I was reassigned from first shift to overnight work without discussion regarding how overnight scheduling could impact a documented sleep disorder. I was later disciplined and ultimately terminated based on allegations related to being asleep or appearing asleep while on duty. Additionally, prior to May 19, 2025, I had no significant disciplinary history. After reporting safety-related concerns and management conduct issues through my union representative, disciplinary allegations escalated significantly. I believe the timing of these actions raises concerns regarding retaliation in addition to disability discrimination. I also requested clarification that management personnel acknowledged during disciplinary proceedings that they had received or were included on the disability disclosure email distribution.

Because management had prior written notice of a medically documented sleep disorder and an accommodation-related concern was raised through my union representative, I believe the employer had sufficient notice to initiate the ADA interactive process under 42 U.S.C. 12112(b)(5)(A). No such process occurred. Instead, the company proceeded with disciplinary actions tied directly to the condition that had been disclosed.

Additionally, the timing of the disciplinary actions following both the disability disclosure and safety-related reporting raises potential concerns under 42 U.S.C. 12203(a) regarding retaliation. During the disciplinary proceedings, a company representative initially stated he had not received the disability disclosure email; however, the presiding officer noted that the representative's name appeared on the recipient list of the April 1 email containing the medical documentation. This exchange further reflects that management personnel had notice of the disclosed condition.

Based on the above, I believe I was discriminated in violation of the Americans with Disabilities Act of 1990, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Mr. Eddy N. Besse
05/14/2026
_____

Charging Party Signature & Date

---

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____
Printed Name _____

# CP Enclosure with EEOC Form 5 (06/24)

## Privacy Act Statement

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **Form Number/Title/Date.** EEOC Form 5, Charge of Discrimination (06/24).

2. **Authority.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **Principal Purposes.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **Routine Uses.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **Whether Disclosure is Mandatory; Effect of Not Giving Information.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## Notice of Right to Request Substantial Weight Review

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## Notice of Non-Retaliation Requirements

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## CHARGE OF DISCRIMINATION

EEOC Form 5A (June 2023)

For Official Use Only – Charge Number:
520-2026-01346

| | |
|---|---|
| **Personal Information** | First Name: Eddy   MI: N   Last Name: Besse<br>Address: 146-11 225th Street   Apt.: FL 2<br>City: Springfield Gardens County: Queens   State: NY Zip Code: 11413<br>Phone: 516-325-0999 Home ☐ Work ☐ Cell ☑ Email: ebesse96@yahoo.com<br>516-325-0999 |
| **Who do you think discriminated against you?** | Employer ☑   Union ☐   Employment Agency ☐   Other Organization ☐<br>Organization Name: Amtrak (Sunnyside Yards)<br>Address: 38-38 43rd Street   Suite: _____<br>City: Long Island City State: NY Zip Code: 11413 Phone: _____ |
| **Why you think you were discriminated against?** | Race ☐   Color ☐   Religion ☐   Sex ☐   National Origin ☐   Age ☐   Pregnancy ☐<br>Disability ☑ Genetic Information ☐   Retaliation ☑   Other ☐ *(specify)* ENB |
| **What happened to you that you think was discriminatory?** | Date of **most recent job action** you think was discriminatory: X Yes. 9-17-25<br>Also describe briefly **each job action** you think was discriminatory and when it happened (estimate). I believe I was terminated due to discrimination based on my disability, specificially my diagnosed sleep apnea condition I emailed 13 plus employees of sunnyside yards that were all upper management. they never acknowledged my emails verbally or written me back on the matter instead used it to justify punitive actions against me which lead to my termination on June 28th I reported to management Blue flag FRA violations through my union rep Then was term...ate for opers to be closer when I na not actualy appering too often sleeper |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br>Signature: Eddy Besse   Date: 11-24-25 |

EEOC
NEW YORK DISTRICT OFFICE

NOV 24 2025

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5A, Charge of Discrimination (July 2016).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Issued July 2016

under the ADA.

This is a formal complaint regarding retaliation, discrimination, due process violations, and evidence tampering during my disciplinary proceedings.

This letter serves as a formal, signed complaint. Please accept this letter as my official submission for investigation.
SAP#: 00834936
Subject:
 Formal Complaint – Retaliation, Disability Discrimination, Evidence Tampering, and Unsafe Workplace Practices (Employee: Eddy Besse, SAP#: 00834936)

To Whom It May Concern,
My name is Eddy Besse (SAP#: 00834936). I am submitting a formal complaint involving:
Disability discrimination (sleep apnea diagnosis ignored by management)

Retaliation after reporting safety violations (FRA Blue Flag violations at Sunnyside Yard)

Procedural misconduct during disciplinary hearings

Evidence tampering and selective omission of documents

Violation of my due process rights in the internal trial

This complaint relates to my wrongful termination from Amtrak following a series of nternal disciplinary hearings held in 2025. Below is a concise summary of the core ssues, along with attached evidence.

1. My Sleep Apnea Diagnosis Was Ignored (ADA Violation)

I provided **written documentation from my doctor** confirming my diagnosis of **severe sleep apnea**.
This documentation was emailed to **over 14 managers**, including:

- General Foremen
- Supervisors
- Class Instructors
- Senior management
- Labor Relations (contacted by my union Rep Kaheem Bryant)
- Amtrak Medical (Contacted by my union Rep Kaheem Byrant)

**No one ever responded.**
No one engaged in the interactive process.
No one discussed accommodations.
No one acknowledged receipt of the diagnosis.

Instead, management used my medical condition to paint a narrative and accuse me of misconduct and used it as justification to remove me — a direct violation of **ADA** and **Rehabilitation Act** obligations. The narrative that was painted was I am an employee that sleeps at work when I never have done so.

---

# 2. Evidence Tampering and Selective Submission of Documents

During my internal trial:

- I submitted **10 documents** through my union representative.

- The charging officer only included **1 document** in the official case file.

- Even that **single** document was incomplete — only *one screenshot* was included while the accompanying medical proof was omitted. It was a 3 part screenshot piece of evidence

This is **tampering, selective evidence filtering**, and **procedural misconduct**.

If evidence is "not usable," it still must be **logged and preserved**, not erased from the record.

# 3. Retaliation After Reporting FRA Blue Flag Violations

I reported **serious Blue Flag safety violations** at Sunnyside Yard. I submitted photo proof of blur flag violation and I even found a total of 5 people working 2 inside the motor while blue flag protection was not fully applied.

Shortly after I reported them:

- Management attempted to discipline me for an incident allegedly occurring on **June 4**.

- I wrote a statement about that incident on **June 13**.

- They did not notify me about the disciplinary trial for this allegation until **5 minutes before the hearing** — after months of silence.

This is classic **retaliation**, and the timing is extremely suspicious.

# 4. Procedural Misconduct During the Internal Trial

These violations occurred:

## a. Surprise witnesses (no notice)

The company used a witness (acting GF Cheryl Johnson) whose statement was never provided to me.
I was deprived of the opportunity to prepare or review her allegations beforehand.

## b. Inconsistent testimony

Ms. Johnson gave contradictory statements about:

- How she reached my location ("I walked" → "I got a ride")

- The timing of her arrival

- Whether she could identify me in the photo

- Whether trains were completed or incomplete

These inconsistencies were ignored by the judge.

### c. The judge sustained evidence that he admitted he could not identify

The judge and the company witness both said:
**"We cannot determine if this is you in the picture."**

Yet the judge still allowed the picture to remain in the trial.
This violates basic evidentiary fairness.

---

# 5. My Termination Was Based on "Appeared to Be in the Attitude of Sleep," Not Proof

The charging letter states:
**"You appeared to be in the attitude of sleep."**

This language is **not proof**, and the trial did not establish actual sleeping.

I have a religious basis for closing my eyes while praying.
I have a medical basis for difficulty waking if truly asleep.
And the company could not establish:

- Time of alleged incident

- Identity in the photos

- Completion/non-completion of trains

- Any corroborating witness testimony

The case lacked substance but was pushed through anyway.

# 6. Retaliation Due to Conflict With Supervisors

On the morning of one of the alleged incidents:

- I emailed management about **Adriana King refusing to give me work orders**.

- The same day she later submitted a negative statement about me.

- Ms. Johnson (the acting GF) was CC'd on that email.

- Days later, I was suddenly accused of "sleeping."

This sequence strongly supports retaliatory motive.

# 7. Trial held out of timeframe where i can be tried on incident

The trial for the June 4th incident where I was wrongfully accused of sleeping was initially scheduled, then rescheduled, and despite the rescheduling, I was never given a new trial date in a timely manner.

It was not until September 3rd (the day of my trial for accusations made in August that I received an email regarding the situation, which occurred in August, stating we were going to discuss the incident. This email was sent only 10 to 15 minutes before we were expected to appear. This delayed notification constitutes a violation of contract, as it falls outside the allowed window for holding a trial regarding the incident.

I raised this issue with the judge at the hearing, explaining that the process was mishandled and outside the contractual timeframe. Unfortunately, my concerns were ignored.

# 8. Retaliation for reporting manager of FRA Blue Flag violation

On June 28th, I reported a serious safety violation involving blue flags. A manager had placed a blue flag on only one side of the track, leaving the other side completely unprotected. After I reported this hazard, I was instructed to write a statement about the incident. I submitted that statement on July 1st.

However, just 30 minutes after I submitted my statement to my union representative via text, I was charged for a violation—my first trial charge.

The trial was Rescheduled with no new date provided and it was not me or my union rep that made a request for it to be rescheduled i didnt hear any updates about when the trial for allegations made on June 4th would be held until 10 minutes before walking into the court room on Sept 3 2025 on the day i was present for trial to talk about 3 allegations in august. It's important to add I was put out of service for one allegation and while I was out of service Amtrak added 2 more allegations for August. To my knowledge I came in to talk about those 3 allegations but 10 minutes before the trial it turned into 4 allegations.

# 9. No Prior history of discipline

This was also the only infraction they charged me with as to create a narrative that I sleep at work when this is not true where I have never been disciplined for anything prior for example being late missing work, being unsafe insubordination or not finishing my assignments. Nothing of the sort just sleeping which leads me to believe sunnyside yards used the knowledge of my sleep apnea as to create a narrative that i sleep at work when i dont

# Request for Investigation and Remedies

I am requesting:

- **A formal investigation** into ADA violations, retaliation, and evidence tampering.

- **Review of the full transcripts**, which I am attaching.

- **Review of the excluded evidence**, which I am attaching separately.

- **Restoration of my employment**, with back pay, if appropriate.

- **Accountability for supervisors who engaged in retaliation.**

I believe this case reflects:

- Disability discrimination

- Retaliation for reporting FRA safety violations

- Procedural bias

- Suppression of evidence

- Wrongful termination

---

# Attachments Included

Attach these files to **each** agency:

## A. Transcripts

- Full internal trial transcript

- Pages showing testimony contradictions

## B. Medical Evidence

- Sleep study results (where i was diagnosis with **Severe Sleep Apnea**)

# Closing Statement

Thank you for reviewing my complaint.
This situation has affected my livelihood, my health, and my ability to support myself.
I respectfully request that your office investigate these civil rights violations and take appropriate action.

Sincerely,

**Eddy N. Besse**
**Former Amtrak Employee**
**SAP#: 00834936**
**Phone:** 516-325-0999
**Email:** ebesse96@yahoo.com

x _Eddy Besse_

Date: _11-21-2025_

- Screenshot of email proving disclosure

- Proof that no one responded

## C. FRA Blue Flag Evidence

- Photos

- Videos

- Written reports

- Email logs

## D. Evidence Tampering

- Screenshots of all 10+ documents submitted

- Proof that only 1 was used

- Proof that even that document was incomplete

## E. Retaliation Timeline

- Emails to management (e.g., Adriana King refusal)

- Date of reports

- Dates of charges

- Date of termination

## F. Pictures Used Against Me

- Photos they claimed were me

- Transcript where judge admits he cannot identify me

---



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
(202) 804-7000
www.osc.gov

February 4, 2026

Eddy Besse
146-11 225th Street
Springfield Gardens, NY 11413

*Sent via email to:* ebesse96@yahoo.com

Re: OSC File No. MA-26-000691

Dear Eddy Besse,

This letter responds to the complaint you filed with the U.S. Office of Special Counsel (OSC) alleging that officials at the Department of Transportation, Federal Railroad Administration (FRA), committed prohibited personnel practices. We understand that preparing a complaint and responding to OSC's inquiries represents a significant amount of work and we thank you for your assistance. OSC has reviewed your complaint in light of the legal elements required to prove your allegation and below are our preliminary findings.

In your complaint, you alleged that after disclosing that you had received a diagnosis of sleep apnea, the FRA brought charges for termination against you for 'being in the attitude of sleep'. You contend that management ignored communications from you about your diagnosis until bringing these termination charges, and that they were brought as retaliation for you disclosing safety violations at Sunnyside Yards as well as previous employee conduct complaints. Further, you allege procedural error and violation of your due process rights during the internal disciplinary hearings that ultimately resulted in your termination.

Although discrimination based on race, color, religion, sex, national origin, age, or disability is a prohibited personnel practice under 5 U.S.C. § 2302(b)(1), OSC's regulation indicates that OSC should avoid duplicating or bypassing the Equal Employment Opportunity (EEO) process at federal agencies and the Equal Employment Opportunity Commission for reviewing allegations of discrimination and retaliation for EEO activity.[1] As such, OSC defers such allegations to the EEO process, which is better equipped to handle them. We will therefore take no further action concerning these allegations as the basis of the alleged retaliation appears to be disability discrimination for your sleep apnea diagnosis.

We understand that our determination regarding your allegation(s) may not be the outcome you wanted, and want to make sure you have a chance to weigh in on our analysis if you choose to do

---

[1] *See* 5 C.F.R. § 1810.1

**Dallas, TX Field Office**
P.O. Box 793771
Dallas, TX 75379
Telephone: (214) 974-7075

**Detroit, MI Field Office**
P.O. Box 760395
Lathrup Village, MI 48076
Telephone: (313) 335-8085

**San Francisco, CA Field Office**
P.O. Box 170023
San Francisco, CA 94117
Telephone: (510) 598-2065

so. You have 13 days from the date of this letter to submit written comments or additional evidence addressing the issues raised in this letter. Please submit any such information to me at the above listed address or via email to SGerhart@osc.gov. OSC will consider your response before making a final decision. If we do not receive a timely response, we will close this case and notify you of any additional rights you may have. Thank you for bringing these allegations to OSC's attention.

Sincerely,

Stephanie Gerhart
Attorney
Investigation and Prosecution Division

**Dallas, TX Field Office**
P.O. Box 793771
Dallas, TX 75379
Telephone: (214) 974-7075

**Detroit, MI Field Office**
P.O. Box 760395
Lathrup Village, MI 48076
Telephone: (313) 335-8085

**San Francisco, CA Field Office**
P.O. Box 170023
San Francisco, CA 94117
Telephone: (510) 598-2065

February 4, 2026

Charging Party Clarification Statement

I am submitting this statement to provide context for the evidence already uploaded in my EEOC charge. I disclosed my diagnosis of severe sleep apnea to Amtrak management beginning in April 2025 via email, including medical documentation, yet no one acknowledged my disclosure or engaged in the required interactive process. Shortly thereafter, I was subjected to multiple disciplinary charges alleging that I was "sleeping," despite a previously clean record and despite management's inability to identify me in photos, provide consistent timestamps, or present corroborated witness testimony.

The disciplinary process included surprise charges (including a June 4 allegation raised without notice minutes before a hearing), inconsistent witness statements, selective omission of evidence I submitted, and reliance on allegations that were contradicted by the record (including a text I sent at 5:19 a.m. immediately before an alleged 5:20 a.m. sleeping incident). I believe my termination was the result of disability discrimination, failure to accommodate, and retaliation following protected activity, including safety reports.

This statement is submitted to assist the EEOC in reviewing the attached evidence and transcripts in their proper context.

Eddy N. Besse

SAP #: 00834936

Subject: Clarification of ADA Interactive Process and Accommodation Request

Hello,

I want to make several points regarding the disability disclosure and accommodation issue clear so the sequence of events is clear for the record.

In October 2024, I was medically diagnosed with sleep apnea. On April 1, 2025, I notified approximately fourteen members of Amtrak management via company email that I had been diagnosed with sleep apnea and attached medical documentation from my physician confirming the diagnosis. Despite this disclosure and documentation, no member of management responded to the email, initiated any discussion, or engaged in any interactive process regarding whether the condition required workplace adjustments.

In addition to this written disclosure, my union representative raised a concern with management that, because I had a medically documented sleep disorder, any observation of me appearing asleep should not automatically be treated as a disciplinary matter without considering the medical condition. Management did not respond to this concern, did not discuss potential accommodations, and did not initiate any dialogue regarding the disability.

Following my disability disclosure, I was reassigned from first shift to overnight work. There was no discussion regarding how an overnight shift could impact a documented sleep disorder. After this reassignment, I was later disciplined and ultimately terminated based on allegations that I was sleeping while on duty.

Because management had prior written notice of a medically documented sleep disorder and an accommodation-related concern was raised through my union representative, I believe the employer had sufficient notice to initiate the ADA interactive process under 42 U.S.C. §12112(b)(5)(A). No such process occurred. Instead, the company proceeded with disciplinary actions tied directly to the condition that had been disclosed.

Additionally, the timing of the disciplinary actions following both the disability disclosure and safety-related reporting raises potential concerns under 42 U.S.C. §12203(a) regarding retaliation.

During the disciplinary proceedings, a company representative initially stated he had not received the disability disclosure email; however, the presiding officer noted that the representative's name appeared on the recipient list of the April 1 email containing the medical documentation. This exchange further reflects that management personnel had notice of the disclosed condition.

I respectfully request that these facts be included in the case record and evaluated under the relevant ADA provisions.

Thank you for your time and consideration.

Sincerely,

Eddy N. Besse

Former Amtrak Employee



# Community
## Health Network

# Sleep-Wake Disorders Center

| Anderson Campus | East Campus | Kokomo Campus | North Campus | South Campus |
|---|---|---|---|---|
| 1515 North Madison Ave | 1400 N Ritter Ave | 3500 S Lafountain St | 7250 Clearvista Dr | 333 E County Line Rd |
| Main Hospital, Fifth Floor | Suite 481 | Cardiac Svcs Entrance | Suite 350 | Suite D |
| Anderson, IN 46011 | Indianapolis, IN 46219 | Kokomo, IN 46902 | Indianapolis, IN 46256 | Greenwood, IN 46143 |
| (765) 298-5455 | (317) 497-1ZZZ | (765) 776-5120 | (317) 497-1ZZZ | (317) 497-1ZZZ |

## HOME SLEEP APNEA TEST

| | | | | | |
|---|---|---|---|---|---|
| **Patient Name:** | BESSE, EDDY | **Test Date:** | 10/3/2024 | **Height:** | 70.0 in. |
| **CSN#** | 10210601055-517730432 | **Test Site:** | CHE | **Weight:** | 314.0 lbs. |
| **Date of Birth / Age:** | 4/27/1996 / 28 yrs. | | | **BMI:** | 45.0 kg/m² |
| **Referred By:** | Alaa Shammah, MD | **Scoring Tech:** | AJohnson RRT RPSGT | **Neck Circumference:** | 18.0 in. |
| **Primary Care:** | N/A | | | **Gender:** | Male |
| **Interpreting Physician:** | Alaa Shammah, MD | | | **Epworth Sleepiness Scale:** | 16/24 |
| **Indications for study:** | G47.10 (ICD-10-CM) - Hypersomnia, unspecified | | | | |
| **Technical Comments:** | | | | | |

| Overall AHI* | Overall RDI | % time < 90% SpO2 | Mean SpO2 | % time snoring |
|---|---|---|---|---|
| 110.8 | 110.8 | 38.4 | 89 | 29.0 |

### SUMMARY:
An overnight Home Sleep Apnea Test was performed on 10/3/2024.

**Sleep Architecture:** The patient underwent a one night home sleep apnea test (with effort monitoring) from 2:53:51 AM - 8:03:51 AM with a Total Recording Time (TRT) of 310.0 minutes, Time In Bed (TIB) of 310.0 and a Total Sleep Time (TST) of 307.5 minutes.

**Respiratory Events:** Hypopneas were scored using AASM definitions VII.4.A (4% desaturation). **Overall Apnea Hypopnea index (AHI) was 110.8/hr.** Mean oxygen saturation was 89%. Oxygen saturation minimum was 60%. Duration of time with an oxygen saturation ≤ 88% (minutes) was 72.0 minutes. Central apneas comprised 0.00% of total apneas and hypopneas. Mixed apneas comprised 0.00% of total apneas and hypopneas. Obstructive apneas and hypopneas comprised 100.00 % of the total.

**Heart Rate Data:** The heart rate during sleep ranged from 27 to 123 beats per minute.

This was a technically adequate study.

### IMPRESSION/RECOMMENDATIONS:

### IMPRESSION:
1. Severe obstructive sleep apnea (overall AHI/REI 110.8/hr) with associated hypoxemia

### RECOMMENDATIONS:
- Untreated obstructive sleep apnea (OSA) is associated with negative health outcomes, including increased risk for cardiovascular events. Treatment of OSA is recommended, especially if moderate or severe OSA, symptomatic, or medical conditions associated with untreated sleep apnea are present. Treatment of sleep apnea should be utilized every time asleep (including naps). Positive airway pressure (PAP) therapy is generally the most efficacious treatment and is the recommended front line therapy, especially if moderate or severe OSA is present. Other treatment options may include an oral appliance, surgical intervention, positional therapy (i.e., avoidance of sleeping supine) if sleep apnea only present in supine position, and/or lifestyle modifications.
- Based on the patient's sleep study findings and giving the severity of his obstructive sleep apnea and hypoxemia with the possible need of high positive airway pressure to treat his OSA, auto-titrating PAP (APAP) is contraindicated. Contraindications to APAP include opiate use, CHF, ESRD, COPD, recent stroke, or other potential risk for frequent central apneas, hypoventilation, or hypoxemia. The next recommended step in treatment of sleep apnea is an **in-lab PAP titration study.**
- Lifestyle modifications, including weight loss if overweight or obese, avoidance of tobacco, and avoidance/limitation of respiratory depressing substances/medications (such as alcohol and opiates), are recommended.

Sleepiness safety precautions, good sleep habits, and obtaining adequate sleep (at least 7 hours per night for adults) should be followed. The patient should not drive or participate in activities requiring a high level of attention when drowsy.

Electronically signed by: Alaa Shammah
Signed date and time: 10/19/2024      9:32 PM

Supplemental Clarification Regarding Accommodation Request

Furthermore, I would like to clarify that an accommodation-related concern was raised after I disclosed my sleep apnea diagnosis. In the April 1, 2025 email to management, I informed them that I had a medically documented sleep disorder and provided supporting medical documentation. In connection with this disclosure, my union representative also raised the concern that if I were ever observed appearing to be asleep, the company should not automatically escalate the situation into discipline without considering the medical condition.

Management never responded to this disclosure or to the accommodation-related concern. They did not acknowledge whether the request was considered reasonable or unreasonable, did not initiate any discussion regarding possible accommodations, and did not engage in the ADA interactive process. No follow-up meeting or dialogue was ever initiated.

Because management did not respond to the disability disclosure or accommodation concern, I believed the issue had been noted and would be handled appropriately if it ever arose. However, the company later disciplined and ultimately terminated me for alleged sleeping on duty without ever addressing the disclosed medical condition or engaging in any interactive process regarding possible accommodation.

For clarity, I am attaching the April 1, 2025 email in which the disability disclosure and accommodation concern were raised so that it can be reviewed as part of the case record.



01:41　　　　　　　　.ıl 5G 39

**BE**　**You**
　　　Eddy.Besse@amtrak.com　　　…

To:　Bryant, Kaheem I Kaheem.Bryant@amtrak.com
　　　Fields, Tyrone FieldsT@amtrak.com
　　　Ruiz, Salvador RuizS@amtrak.com
　　　Hull, Felix HullF@amtrak.com
　　　Primiani, Anthony F Anthony.Primiani@amtrak.com
　　　Rosales, David David.Rosales@amtrak.com
　　　Ayers, Darryl AyersD@amtrak.com
　　　Lamptey, Emmanuel Emmanuel.Lamptey@amtrak.com
　　　Khellawan, Anthony KhellaA@amtrak.com
　　　Harris, Rita HarrisRit@amtrak.com
　　　Gillard, Kyle GillarK@amtrak.com
　　　King, Shamel Shamel.King@amtrak.com
　　　Lukasiewicz, John John.Lukasiewicz@amtrak.com
　　　Martinez-Lieberman, Jacqueline
　　　MartinJacq@amtrak.com
　　　Johnson, Carlton Carlton.Johnson.1@amtrak.com
　　　Blanco, Mikhail Mikhail.BlancoOLD@amtrak.com
　　　Sunday, July 20, 00:45

📄　Scan - SLEEP STUDY UNATTENDED - Oct 1...
　　　PDF - 195 KB

Document/PDF of sleep study results where my doctor
diagnosed me with sleep apnea in October of 2024
Get Outlook for iOS

↩ ⌄ Reply All　　　✉ 🗑 🗄 …

📁 Star ⭐

✉　　　　📅　　　　⊞
Mail　　　Calendar　　　Apps

# HOME SLEEP APNEA TEST

## DETAILED RESULTS

**Test Architecture Data**

| | |
|---|---|
| Lights off clock time: | 2:53:51 AM |
| Lights on clock time: | 8:03:51 AM |
| Total Recording Time (TRT): | 310.0 min |
| Time In Bed (TIB): | 310.0 min |
| Total Sleep Time (TST): | 307.5 min |

**Data Failure**

| | |
|---|---|
| HR fail during SLP | 6.2 min |
| SaO2: total duration of fail | 7.9 min |
| Resp fail duration during SLP | 0.0 min |
| Effort fail duration during SLP | 0.0 min |
| Flow fail duration during SLP | 0.0 min |

**Heart Rate Data**

| | |
|---|---|
| Mean HR during sleep | 90.1 (BPM) |
| Highest HR during sleep | 123 (BPM) |
| Highest HR during TIB | 124 (BPM) |
| Lowest HR during sleep | 27 (BPM) |
| Lowest HR during TIB | 27 (BPM) |

**Snore Data**

| | |
|---|---|
| Total Snoring Episodes | 902 |
| Total Duration with Snoring | 89.2 min |
| Mean Duration of Snoring | 5.9 sec |
| Percentage of Snoring | 29.0 % |

**Oximetry Data**

| | | | | |
|---|---|---|---|---|
| Baseline SaO2 %: | 95 | Dur. (min) | | % TIB |
| Average % | 89 | <90 % | 118.9 | 38.4 |
| Min SaO2%: (> 2 sec) | 62 | <85 % | 34.0 | 11.0 |
| Total # of Desats | 527 | <80 % | 17.8 | 5.7 |
| Desat Index (#/hour) | 104.9 | <70 % | 0.7 | 0.2 |
| **SaO2 <88% TRT** | **72.0** | **SaO2 <88% TST** | **72.00** | |

**Respiratory Data**

| Respiratory Data | # | Max Duration (sec) | *Index (#/hr TST) | NREM Index | REM Index |
|---|---|---|---|---|---|
| Obstructive Apneas | 463 | 55.0 | 90.3 | 90.3 | |
| Central Apneas | 0 | 0.0 | 0.0 | 0.0 | |
| Mixed Apneas | 0 | 0.0 | 0.0 | 0.0 | |
| Apnea | 463 | 55.0 | 90.3 | 90.3 | |
| Hypopnea | 105 | 33.5 | 20.5 | 20.5 | |
| **AHI:** | 568 | 55.0 | **110.8** | 110.8 | |
| **RDI:** | 568 | 55.0 | **110.8** | 110.8 | |

*Above Index Values Based on Total Sleep Time ■ Hypopneas were scored per AASM definition VIII.4.A (4% desaturation).

## FULL-NIGHT HYPNOGRAM
### All Night Graph



Ruiz, Salvador RuizS@amtrak.com

Hull, Felix HullF@amtrak.com

Primiani, Anthony F Anthony.Primiani@amtrak.com

Rosales, David David.Rosales@amtrak.com

Ayers, Darryl AyersD@amtrak.com

Lamptey, Emmanuel Emmanuel.Lamptey@amtrak.com

Khellawan, Anthony KhellaA@amtrak.com

Blanco, Mikhail Mikhail.Blanco@amtrak.com

Harris, Rita HarrisRit@amtrak.com

Gillard, Kyle GillarK@amtrak.com

King, Shamel Shamel.King@amtrak.com

Lukasiewicz, John John.Lukasiewicz@amtrak.com

Martinez-Lieberman, Jacqueline MartinJacq@amtrak.com

Johnson, Carlton Carlton.Johnson.1@amtrak.com

Cc:   You Eddy.Besse@amtrak.com

Tuesday, April 1, 12:35

I have an electrician who transferred here to sunnyside not too long ago. He is diagnosed with severe sleep apnea. I spoke to labor relations and the medical department and was informed that he does not fall under the sleep apnea policy or restrictions and does not have to report it to the medical department. He wants management to be aware of this to avoid any future issues or possible discipline if caught sleeping. His name is Eddy Besse and he is cc'd in this email.

 Reply All    

 Mail     24 Calendar      Apps



**Fw: Eddy Besse**

📎 1

🗂 Star ⭐

**BK**  **Bryant, Kaheem I**
Kaheem.Bryant@amtrak.com

To: **Fields, Tyrone** FieldsT@amtrak.com
**Ruiz, Salvador** RuizS@amtrak.com
**Hull, Felix** HullF@amtrak.com
**Primiani, Anthony F** Anthony.Primiani@amtrak.com
**Rosales, David** David.Rosales@amtrak.com
**Ayers, Darryl** AyersD@amtrak.com
**Lamptey, Emmanuel** Emmanuel.Lamptey@amtrak.com
**Khellawan, Anthony** KhellaA@amtrak.com
**Blanco, Mikhail** Mikhail.Blanco@amtrak.com
**Harris, Rita** HarrisRit@amtrak.com
**Gillard, Kyle** GillarK@amtrak.com
**King, Shamel** Shamel.King@amtrak.com
**Lukasiewicz, John** John.Lukasiewicz@amtrak.com
**Martinez-Lieberman, Jacqueline**
MartinJacq@amtrak.com
**Johnson, Carlton** Carlton.Johnson.1@amtrak.com

Cc: **You** Eddy.Besse@amtrak.com

Tuesday, April 1, 12:35

I have an electrician who transferred here to sunnyside
not too long ago. He is diagnosed with severe sleep
annea. I snoke to labor relations and the medical

 
Filing with EEOC

| Assessment | Inquiry | Schedule Interview | More Details | File Charge |

## My Charge

**EEOC Number:** 520-2026-01346

**Status: Charge Closed**

The charge of discrimination filed on **11/24/2025** with the U.S. Equal Employment Opportunity Commission (EEOC) by **Eddy N Besse** against **AMTRAK** is available for you to view online

[ View My Representative's Information ]   [ View My Information ]

## My Documents

You can upload, view, and download documents related to your charge here (including the respondent's position statement, if you requested a copy). If the EEOC closes your charge, the documents will be available for 90 days.

**You should save all physical and electronic information and material related to your charge, even if you do not upload it here.**

Upload

| Name | Type | Added On | Added By |
|---|---|---|---|
| INSTRUCTIONS ABOUT FILING in Court (002).pdf | Correspondence To/From Charging Party | 06/26/2026 | SILVIA DENG-BATISTA |
| Besse Notice of Rights to Sue - 2026-06-26T101725.756.pdf | Closure Notice/NRTS | 06/26/2026 | SILVIA DENG-BATISTA |
| 520-2026-01346_ChargeOfDiscrimination | Charge of Discrimination | 05/14/2026 | arcapp user |
| ilovepdf_merged (7) | Evidence Provided by Charging Party | 04/28/2026 | Charging Party |
| pdf_merged | Evidence Provided by Charging Party | 03/05/2026 | Charging Party |
| EEOC letter for portal 3.4.26(2) | Evidence Provided by Charging Party | 03/04/2026 | Charging Party |
| Supplemental Legal Clarification – ADA Interactive Process_ Disability-Based Discipline_ and Retaliation.msg | Evidence Provided by Charging Party | 03/04/2026 | CHARLES DIAMOND |
| 2026-0134 Besse, Eddy N. Referral Lettter (EEOC)_signed-merged | Evidence Provided by Charging Party | 02/05/2026 | Charging Party |
| besse-0691-pre-determination-letter-merged-pdf | Evidence Provided by Charging Party | 02/04/2026 | Charging Party |
| pdf.net_20251121_190553 (2) | Evidence Provided by Charging Party | 12/26/2025 | Charging Party |
| pdf.net_20251121_190553 (1) | Evidence Provided by Charging Party | 12/26/2025 | Charging Party |
| 2025-11-14_ Frm CP- 520-2026-01346_ Form 5A + Supplement | Charge of Discrimination-Form 5A | 11/25/2025 | SYLVESTER PHEKOO |

 **Community Health Network**

# Sleep-Wake Disorders Center

**Anderson Campus**
1515 North Madison Ave
Main Hospital, Fifth Floor
Anderson, IN 46011
(765) 298-5455

**East Campus**
1400 N Ritter Ave
Suite 481
Indianapolis, IN 46219
(317) 497-1ZZZ

**Kokomo Campus**
3500 S Lafountain St
Cardiac Svcs Entrance
Kokomo, IN 46902
(765) 776-5120

**North Campus**
7250 Clearvista Dr
Suite 350
Indianapolis, IN 46256
(317) 497-1ZZZ

**South Campus**
333 E County Line Rd
Suite D
Greenwood, IN 46143
(317) 497-1ZZZ

## HOME SLEEP APNEA TEST

| | | | | | |
|---|---|---|---|---|---|
| **Patient Name:** | BESSE, EDDY | **Test Date:** | 10/3/2024 | **Height:** | 70.0 in. |
| **CSN#** | 10210601055-517730432 | **Test Site:** | CHE | **Weight:** | 314.0 lbs. |
| **Date of Birth / Age:** | 4/27/1996 / 28 yrs. | | | **BMI:** | 45.0 kg/m² |
| **Referred By:** | Alaa Shammah, MD | **Scoring Tech:** | AJohnson RRT RPSGT | **Neck Circumference:** | 18.0 in. |
| **Primary Care:** | N/A | | | **Gender:** | Male |
| **Interpreting Physician:** | Alaa Shammah, MD | | | **Epworth Sleepiness Scale:** | 16/24 |
| **Indications for study:** | G47.10 (ICD-10-CM) - Hypersomnia, unspecified | | | | |
| **Technical Comments:** | | | | | |

| Overall AHI* | Overall RDI | % time < 90% SpO2 | Mean SpO2 | % time snoring |
|---|---|---|---|---|
| 110.8 | 110.8 | 38.4 | 89 | 29.0 |

**SUMMARY:**
An overnight Home Sleep Apnea Test was performed on 10/3/2024.

**Sleep Architecture**: The patient underwent a one night home sleep apnea test (with effort monitoring) from 2:53:51 AM - 8:03:51 AM with a Total Recording Time (TRT) of 310.0 minutes, Time In Bed (TIB) of 310.0 and a Total Sleep Time (TST) of 307.5 minutes.

**Respiratory Events**: Hypopneas were scored using AASM definitions VII.4.A (4% desaturation). **Overall Apnea Hypopnea index (AHI) was 110.8/hr.** Mean oxygen saturation was 89%. Oxygen saturation minimum was 60%. Duration of time with an oxygen saturation ≤ 88% (minutes) was 72.0 minutes. Central apneas comprised 0.00% of total apneas and hypopneas. Mixed apneas comprised 0.00% of total apneas and hypopneas. Obstructive apneas and hypopneas comprised 100.00 % of the total.

**Heart Rate Data**: The heart rate during sleep ranged from 27 to 123 beats per minute.

This was a technically adequate study.

**IMPRESSION/RECOMMENDATIONS:**

**IMPRESSION:**
1.     Severe obstructive sleep apnea (overall AHI/REI 110.8/hr) with associated hypoxemia

**RECOMMENDATIONS:**
- Untreated obstructive sleep apnea (OSA) is associated with negative health outcomes, including increased risk for cardiovascular events. Treatment of OSA is recommended, especially if moderate or severe OSA, symptomatic, or medical conditions associated with untreated sleep apnea are present. Treatment of sleep apnea should be utilized every time asleep (including naps). Positive airway pressure (PAP) therapy is generally the most efficacious treatment and is the recommended front line therapy, especially if moderate or severe OSA is present. Other treatment options may include an oral appliance, surgical intervention, positional therapy (i.e., avoidance of sleeping supine) if sleep apnea only present in supine position, and/or lifestyle modifications.
- Based on the patient's sleep study findings and giving the severity of his obstructive sleep apnea and hypoxemia with the possible need of high positive airway pressure to treat his OSA, auto-titrating PAP (APAP) is contraindicated. Contraindications to APAP include opiate use, CHF, ESRD, COPD, recent stroke, or other potential risk for frequent central apneas, hypoventilation, or hypoxemia. The next recommended step in treatment of sleep apnea is an **in-lab PAP titration study.**
- Lifestyle modifications, including weight loss if overweight or obese, avoidance of tobacco, and avoidance/limitation of respiratory depressing substances/medications (such as alcohol and opiates), are recommended.

Sleepiness safety precautions, good sleep habits, and obtaining adequate sleep (at least 7 hours per night for adults) should be followed. The patient should not drive or participate in activities requiring a high level of attention when drowsy.

Electronically signed by: Alaa Shammah
Signed date and time: 10/19/2024                    9:32 PM

# HOME SLEEP APNEA TEST

## DETAILED RESULTS

**Test Architecture Data**

| | |
|---|---|
| Lights off clock time: | 2:53:51 AM |
| Lights on clock time: | 8:03:51 AM |
| Total Recording Time (TRT): | 310.0 min |
| Time In Bed (TIB): | 310.0 min |
| Total Sleep Time (TST): | 307.5 min |
| | |

**Data Failure**

| | |
|---|---|
| HR fail during SLP | 6.2 min |
| SaO2: total duration of fail | 7.9 min |
| Resp fail duration during SLP | 0.0 min |
| Effort fail duration during SLP | 0.0 min |
| Flow fail duration during SLP | 0.0 min |

**Heart Rate Data**

| | |
|---|---|
| Mean HR during sleep | 90.1 (BPM) |
| Highest HR during sleep | 123 (BPM) |
| Highest HR during TIB | 124 (BPM) |
| Lowest HR during sleep | 27 (BPM) |
| Lowest HR during TIB | 27 (BPM) |

**Snore Data**

| | |
|---|---|
| Total Snoring Episodes | 902 |
| Total Duration with Snoring | 89.2 min |
| Mean Duration of Snoring | 5.9 sec |
| Percentage of Snoring | 29.0 % |

**Oximetry Data**

| | | | | |
|---|---|---|---|---|
| Baseline SaO2 %: | 95 | Dur. (min) | | % TIB |
| Average % | 89 | <90 % | 118.9 | 38.4 |
| Min SaO2%: (> 2 sec) | 62 | <85 % | 34.0 | 11.0 |
| Total # of Desats | 527 | <80 % | 17.8 | 5.7 |
| Desat Index (#/hour) | 104.9 | <70 % | 0.7 | 0.2 |
| **SaO2 <88% TRT** | **72.0** | **SaO2 <88% TST** | **72.00** | |

**Respiratory Data**

| Respiratory Data | # | Max Duration (sec) | *Index (#/hr TST) | NREM Index | REM Index |
|---|---|---|---|---|---|
| Obstructive Apneas | 463 | 55.0 | 90.3 | 90.3 | |
| Central Apneas | 0 | 0.0 | 0.0 | 0.0 | |
| Mixed Apneas | 0 | 0.0 | 0.0 | 0.0 | |
| Apnea | 463 | 55.0 | 90.3 | 90.3 | |
| Hypopnea | 105 | 33.5 | 20.5 | 20.5 | |
| AHI: | 568 | 55.0 | 110.8 | 110.8 | |
| RDI: | 568 | 55.0 | 110.8 | 110.8 | |

*Above Index Values Based on Total Sleep Time  ■ Hypopneas were scored per AASM definition VIII.4.A (4% desaturation).

## FULL-NIGHT HYPNOGRAM
### All Night Graph



 **Community Health Network**

# Sleep-Wake Disorders Center

| **Anderson Campus** | **East Campus** | **Kokomo Campus** | **North Campus** | **South Campus** |
|---|---|---|---|---|
| 1515 North Madison Ave | 1400 N Ritter Ave | 3500 S Lafountain St | 7250 Clearvista Dr | 333 E County Line Rd |
| Main Hospital, Fifth Floor | Suite 481 | Cardiac Svcs Entrance | Suite 350 | Suite D |
| Anderson, IN 46011 | Indianapolis, IN 46219 | Kokomo, IN 46902 | Indianapolis, IN 46256 | Greenwood, IN 46143 |
| (765) 298-5455 | (317) 497-1ZZZ | (765) 776-5120 | (317) 497-1ZZZ | (317) 497-1ZZZ |

## OVERNIGHT POLYSOMNOGRAM PAP TITRATION REPORT

| | | | | | |
|---|---|---|---|---|---|
| **Patient Name:** | BESSE, EDDY | **Test Date:** | 10/28/2024 | **Height:** | 70.0 in. |
| **CSN#** | 10212978829-521507957 | **Test Site:** | North | **Weight:** | 314.0 lbs. |
| **Date of Birth / Age:** | 4/27/1996 / 28 yrs. | **Recording Tech:** | Paris Murray, RPSGT | **BMI:** | 45.0 kg/m² |
| **Referred By:** | Alaa Shammah, MD | **Scoring Tech:** | Paris Murray, RPSGT | **Neck Circumference:** | 18.5 in. |
| **Primary Care:** | Adela Simmons, MD | | | **Gender:** | Male |
| **Interpreting Physician:** | Alaa Shammah | | | **Epworth Sleepiness Scale:** | 19/24 |

**Indications for study:** Severe OSA/ Hypoxemia/ Hypersomnia/ Morbid Obesity

**Medications at the time of study:** None listed

**Technique**: This patient was continuously monitored from 9:11:03 PM to 4:45:51 AM utilizing a standard polysomnographic montage, which included EEG, occulogram, chin and bilateral anterior tibialis surface EMG, EKG, respirations, and nasal/mouth airflow. Finger oximetry was also monitored.

**Technician Comments:** Patient arrived to sleep center for a CPAP titration. Pt signed PAP consent form per policy. Pt had a recent HST with severe OSA with an AHI of 110/hr and desaturations to 62%. Pt was shown several masks, but chose a FF mask due to severe OSA and mouth breathing when snoring. Pt began using CPAP 9 cwp for pt comfort with Respironics Dreamwear FF. Pt tolerated CPAP well. Pt was titrated to CPAP 14 cwp and had very few respiratory events even when leak was increased, pt's sleep was did not appear to be disrupted. Tech switched to BIPAP 15/11 cwp due to increased leaks and incareased CPAP pressures. All sleep stages observed. Pt remained supine for entire sleep study. Final pressure= BIPAP 15/11 cwp. When pt arrived, he requested to get up as soon as 6 hrs were completed. Results pending. In the am, pt said he felt like he slept much better and really liked the pressure he woke up with. Pt would like a BIPAP 15/11 cwp with the Respironics Dreamwear Full Face mask is possible. Please expedite due to OSA. Moderate snoring was noted.

**Date of Diagnostic Study:** 10/3/2024  **AHI on Diagnostic Study:** 110.8/hr  **Mask Used:** Respironics Dreamwear Full Face- medium wide  **Mask Size:** medium wide

---

**SUMMARY:**
An overnight polysomnogram with PAP titration was performed on 10/28/2024. Medications were reviewed and are listed above.

**Sleep Architecture:** The polysomnogram lasted from 10:14:03 PM - 4:25:03 AM and demonstrated a prolonged sleep latency of 33.5 minutes, an increased percent of REM sleep at 26.2%. REM latency was normal and reported as 38.0 minutes. Total sleep time was 328.0 minutes and sleep efficiency was normal at 88.4%. Wake after sleep onset was 9.5 minutes.

**Respiratory Events:** Hypopneas were scored using AASM definitions VII.4.A (4% desaturation). The overall Apnea Hypopnea index (AHI) was 4.0/hr. Mean oxygen saturation was 94%. Oxygen saturation minimum was 77%. Duration of time with an oxygen saturation ≤ 88% was 3.3 minutes.

**Movement Events:** The patient had a Periodic Limb Movement (PLM) index of 0/hr.

**Cardiac Events:** The heart rate during sleep ranged from 69 to 102 beats per minute. Arrhythmias: Tachycardia

**IMPRESSION:**
1. Sleep disordered breathing and assoiciated hypoxemia were resolved with PAP during this study

**RECOMMENDATIONS:**
- **A trial of Bilevel PAP at 15/11 cmH2O** is recommended for treatment of sleep-disordered breathing. ( patient prefered full face mask)
- Regular clinical follow up with review of the PAP usage information (downloaded from the machine) is recommended to assess for compliance and adequate treatment of sleep-disordered breathing.
- Untreated obstructive sleep apnea (OSA) is associated with negative health outcomes, including increased risk for cardiovascular events. Treatment of OSA is recommended, especially if moderate or severe OSA, symptomatic, or medical conditions associated with untreated sleep apnea are present. Treatment of sleep apnea should be utilized every time asleep (including naps). Positive airway pressure (PAP) therapy is generally the most efficacious treatment and is the recommended front line therapy, especially if moderate or severe OSA is present. Other treatment options may include an oral appliance, surgical intervention, positional therapy (i.e., avoidance of sleeping supine) if sleep apnea only present in supine position, and/or lifestyle modifications.

Lifestyle modifications, including weight loss if overweight or obese, avoidance of tobacco, and avoidance/limitation of respiratory depressing substances/medications (such as alcohol and opiates), are recommended.

Electronically signed by: Alaa Shammah
Signed date and time: 10/29/2024        9:59 PM

# OVERNIGHT POLYSOMNOGRAM PAP TITRATION REPORT

## DETAILED RESULTS

**Subjective Report**: This patient reported a 10-15 minute sleep onset with 0 awakenings, overall very good sleep quality. This night's sleep was better than usual sleep at home.

### SLEEP ARCHITECTURE (Full-Night)

| | |
|---|---|
| Lights Out: | 10:14:03 PM |
| Lights On: | 4:25:03 AM |
| Total Recording Time: | 371.0 min. |
| Total Sleep Time: | 328.0 min. |
| Sleep Latency: | 33.5 min. |
| Sleep Efficiency: | 88.4 % |
| Stage REM Latency: | 38.0 min. |

### SLEEP STAGE DISTRIBUTION (Full-Night)

| | | |
|---|---|---|
| WASO: | | 9.5 min |
| Stage N1: | 1.4% | 4.5 min |
| Stage N2: | 32.6% | 107.0 min |
| Stage N3: | 39.8% | 130.5 min |
| Stage R: | 26.2% | 86.0 min |

| TYPE | YES | NO | RATE / DURATION |
|---|---|---|---|
| Bradycardia: | | ✓ | Lowest HR Scored: N/A |
| Unclassified Tachycardia: | | ✓ | Highest HR Scored: N/A |
| Sinus Tach During Sleep: | | ✓ | Highest HR Scored: N/A |
| Narrow Complex Tach: | | ✓ | Highest HR Scored: N/A |
| Wide Complex Tach: | | ✓ | Highest HR Scored: N/A |
| Asystole: | | ✓ | Longest Pause: N/A |
| Atrial Fibrillation: | | ✓ | Duration Longest Event: N/A |

### AROUSAL RESULTS (Full-Night)

| | |
|---|---|
| Total Arousals: | 46 |
| Total Arousal Index: | 8.4 |
| Total Arousals+Awakenings/hr: | 8.4 |

### LIMB MOVEMENTS (Full-Night)

| | # | Index |
|---|---|---|
| Total PLMs: | | |
| PLMs with Arousals: | | |
| PLMs without Arousals: | | |

### CARDIAC (Full-Night)

| | |
|---|---|
| Average Rate During Sleep: | 86.7 bpm |
| Highest Rate During Sleep: | 102 bpm |
| Highest Rate During Recording: | 107 bpm |

### OXYGEN SATURATION (Full-Night)

| | |
|---|---|
| Baseline SaO2% (wake): | 96 |
| Max SaO2%: | 98 |
| Min SaO2%: (≥ 2 sec) | 77 |
| **Ave SaO2%:** | **94** |
| **SaO2 <88% in min TST (sleep time)** | **2.80** |
| **SaO2 <88% in min TRT (recorded time)** | **3.3** |

| RESPIRATORY DATA (Full-Night) | # | Max Duration (sec) | Index (#/hr TST) | NREM Index | REM Index |
|---|---|---|---|---|---|
| Obstructive Apneas | 0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Central Apneas | 3 | 20.5 | 0.5 | 0.7 | 0.0 |
| Mixed Apneas | 0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Apnea | 3 | 20.5 | 0.5 | 0.7 | 0.0 |
| Hypopnea | 19 | 34.0 | 3.5 | 1.2 | 9.1 |
| **AHI: Apnea+Hypopnea** | 22 | 34.0 | **4.0** | 2.0 | 9.1 |
| **RDI: Apnea+hypopnea+RERAs** | 22 | 34.0 | **4.0** | 9.1 | 2.0 |

*Above Index Values Based on Total Sleep Time ■ Hypopneas were scored per AASM definition VIII.4.A (4% desaturation).

Cheyne-Stokes breathing did not occur during this study.

# OVERNIGHT POLYSOMNOGRAM PAP TITRATION REPORT

## PAP TITRATION TABLE

| Pressure Level cmH$_2$O | | Time in Minutes | | | Apneas | | | | Hypopneas | | RERA | | Indices | | Lowest SpO$_2$ | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IPAP | EPAP | Total | Sleep | REM | CA | OA | MA | Index | Count | Index | Count | Index | AHI | RDI | Min % | ≤ 88% min | Sup O$_2$ LMP |
| 9 | 9 | 12.6 | 12.6 | 0.0 | 0 | 0 | 0 | 0.0 | 2 | 9.5 | 0 | 0.0 | 9.5 | 9.5 | 92 | | |
| 10 | 10 | 27.9 | 27.9 | 2.8 | 0 | 0 | 0 | 0.0 | 4 | 8.6 | 0 | 0.0 | 8.6 | 8.6 | 77 | 1.2 | |
| 11 | 11 | 46.8 | 43.8 | 10.4 | 0 | 0 | 0 | 0.0 | 8 | 11.0 | 0 | 0.0 | 11.0 | 11.0 | 80 | 1.5 | |
| 12 | 12 | 66.4 | 66.4 | 20.0 | 1 | 0 | 0 | 0.9 | 2 | 1.8 | 0 | 0.0 | 2.7 | 2.7 | 91 | | |
| 13 | 13 | 46.6 | 45.6 | 6.5 | 1 | 0 | 0 | 1.3 | 2 | 2.6 | 0 | 0.0 | 3.9 | 3.9 | 86 | 0.1 | |
| 14 | 14 | 64.6 | 63.1 | 30.2 | 0 | 0 | 0 | 0.0 | 1 | 1.0 | 0 | 0.0 | 1.0 | 1.0 | 93 | | |
| 15 | 11 | 69.5 | 66.5 | 15.5 | 0 | 0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 91 | | |
| | | | | | | | | | | | | | | | | | |

# OVERNIGHT POLYSOMNOGRAM PAP TITRATION REPORT

## FULL-NIGHT HYPNOGRAM



# OVERNIGHT POLYSOMNOGRAM PAP TITRATION REPORT

# TECHNICIAN COMMENTS

| | | | |
|---|---|---|---|
| Patient name: | BESSE | Acq: | 555 |
| First name: | EDDY | Type: | Adult |
| Gender: | Male | Started: | 10/28/2024 at 9:11:03 PM |
| Date of Birth / Age: | 4/27/1996  /  28 yrs. | Stopped: | 10/29/2024 at 4:45:51 AM |

**Technician Comments- Paris Murray, RPSGT**

Patient arrived to sleep center for a CPAP titration. Pt signed PAP consent form per policy. Pt had a recent HST with severe OSA with an AHI of 110/hr and desaturations to 62%. Pt was shown several masks, but chose a FF mask due to severe OSA and mouth breathing when snoring. Pt began using CPAP 9 cwp for pt comfort with Respironics Dreamwear FF. Pt tolerated CPAP well. Pt was titrated to CPAP 14 cwp and had very few respiratory events even when leak was increased, pt's sleep was did not appear to be disrupted. Tech switched to BIPAP 15/11 cwp due to increased leaks and incareased CPAP pressures. All sleep stages observed. Pt remained supine for entire sleep study. Final pressure= BIPAP 15/11 cwp. When pt arrived, he requested to get up as soon as 6 hrs were completed. Results pending. In the am, pt said he felt like he slept much better and really liked the pressure he woke up with. Pt would like a BIPAP 15/11 cwp with the Respironics Dreamwear Full Face mask is possible. Please expedite due to OSA. Moderate snoring was noted.

### Raw Data Comments

| Time Entered | Epoch # | Comment |
|---|---|---|
| 10:11:37 PM | 122 | Eyes Closed |
| 10:11:57 PM | 122 | Eyes Open |
| 10:12:24 PM | 123 | Look Left Right |
| 10:12:30 PM | 123 | Look Up Down |
| 10:12:39 PM | 124 | Blink 5 Times |
| 10:12:46 PM | 124 | Grit Teeth |
| 10:12:52 PM | 124 | Coughing |
| 10:12:57 PM | 124 | Flex Left Leg |
| 10:13:01 PM | 124 | Flex Right Leg |
| 10:13:05 PM | 125 | Deep Breath Hold |
| 10:13:15 PM | 125 | Nasal Breathing |
| 10:13:37 PM | 126 | Oral Breathing |
| 10:14:00 PM | 126 | Lights OFF |
| 10:14:32 PM | 127 | BESSE, EDDY 4/27/1996 NORTH, CPAP |
| 10:15:06 PM | 129 | CSN# 10212978829 |
| 10:15:28 PM | 129 | PT SIGNED PAP CONSENT FORM PER POLICY |
| 10:15:50 PM | 130 | PT BEGAN USING CPAP 7 CWP WITH RESPIRONICS DREAMWEAR FULL FACE-MEDIUM WIDE |
| 10:16:38 PM | 132 | HR 96 SPO2 95 RR 22 SUPINE, WAKE CPAP 7 LEAK 20 |
| 10:27:41 PM | 154 | CPAP 9 CWP FOR PT COMFORT |
| 10:31:56 PM | 162 | HR 98 SP02 95 RR 18 SUPINE, WAKE CPAP 9 LEAK 47 |
| 10:59:01 PM | 216 | HR 91 SPO2 93 RR 22 SUPINE, N3 CPAP 9 LEAK 33 |
| 11:00:17 PM | 219 | CPAP 11 CWP DUE TO SNORING |
| 11:28:26 PM | 275 | CPAP 11 CWP DUE TO RESPIRATORY EVENTS |
| 11:29:18 PM | 277 | REM SUPINE |
| 11:31:01 PM | 280 | HR 87 SPO2 91 RR 18 SUPINE, CPAP 11 LEAK 48 |

# OVERNIGHT POLYSOMNOGRAM PAP TITRATION REPORT
## Raw Data Comments

| Time Entered | Epoch # | Comment |
|---|---|---|
| 12:00:21 AM | 339 | HR 92 SPO2 93 RR 20 SUPINE, N3 CPAP 11 LEAK 66 |
| 12:15:28 AM | 369 | CPAP 12 CWP DUE TO RESPIRATORY EVENTS |
| 12:30:21 AM | 399 | HR 86 SPO2 95 RR 20 SUPINE, REM CPAP 12 LEAK 80 |
| 1:00:21 AM | 459 | HR 90 SPO2 93 RR 22 SUPINE, CPAP 12 LEAK 81 |
| 1:22:05 AM | 503 | CPAP 13 CWP DUE TO MILD SNORING AND FEW RESPIRATORY EVENTS |
| 1:23:21 AM | 505 | BELTS RE READING POORLY, PLEASE CHOOSE BEST FIT FOR BEST VISUAL AT THIS TIME |
| 1:30:17 AM | 519 | HR 78 SPO2 95 RR 22 SUPINE, N2 CPAP 13 LEAK 94 |
| 1:58:46 AM | 576 | ECG POPPING |
| 2:00:17 AM | 579 | HR 87 SPO2 95 RR 20 SUPINE, N3 CPAP 13 LEAK 98 |
| 2:02:51 AM | 584 | TECH IN TO FIX MASK LEAK |
| 2:04:45 AM | 588 | TECH FIXED MASK LEAK, TECH OUT |
| 2:06:12 AM | 591 | ADJUSTING BELTS |
| 2:07:26 AM | 593 | TECH ADJUSTED BOTH BELTS FOR BETTER VISUAL |
| 2:07:39 AM | 594 | PT IS IN REM SLEEP, TECH OUT |
| 2:08:28 AM | 595 | ECG POPPING AGAIN AFTER TECH ADJUSTED LEADS |
| 2:09:06 AM | 597 | CPAP 14 CWP DUE TO RESPIRATORY EVENTS |
| 2:32:17 AM | 643 | HR 87 SPO2 95 RR 22 SUPINE, REM CPAP 14 LEAK 42 |
| 2:58:17 AM | 695 | HR 81 SPO2 97 RR 20 SUPINE, CPAP 14 LEAK 44 |
| 3:13:56 AM | 726 | BIPAP 15/11 CWP DUE TO FEW RESPIRATORY EVENTS AND INCREASED CPAP PRESSURES |
| 3:30:17 AM | 759 | HR 85 SPO2 95 RR 18 SUPINE, REM BIPAP 15/11 LEAK 37 |
| 4:25:02 AM | 868 | Lights On |
| 4:25:04 AM | 869 | PT COMPLETED 6 HRS, AND WHEN HE ARRIVED HE REQUESTED TO END STUDY EARLY |
| 4:26:44 AM | 872 | Eyes Open |
| 4:27:36 AM | 874 | Look Left Right |
| 4:27:42 AM | 874 | Look Up Down |
| 4:27:49 AM | 874 | Blink 5 Times |
| 4:27:57 AM | 874 | Grit Teeth |
| 4:28:05 AM | 875 | Flex Left Leg |
| 4:28:09 AM | 875 | Flex Right Leg |
| 4:28:14 AM | 875 | Deep Breath Hold |
| 4:28:25 AM | 875 | Nasal Breathing |
| 4:28:32 AM | 875 | Oral Breathing |

Scoring Tech: Paris Murray, RPSGT       Date Scored: 10/29/24

Yes Paris Murray, RPSGT

# 2025 HEARING/INVESTIGATION ATTENDANCE RECORD

**NAME OF CASE: Eddy Besse**

**DATE: September 3, 2025**

**FILE ODI NUMBER: 452.25NY**

**LOCATION: NYP-VIRTUAL**

| NAME<br>Please Print | TITLE<br>Please Print |
|---|---|
| Timothy M. Miller | Hearing Officer |
| Eddy Besse | Employee |
| Christopher Richtarich | Charging Officer |
| David Rosales | Carrier Witness |
| Sharell Johnson | Carrier Witness |
| Jesroy Billingy | IBEW Representative |
| Hector Negron | Silent Observer |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# 2025 HEARING/INVESTIGATION RECORD OF EXHIBITS

**NAME OF CASE: Eddy Besse**                **DATE: September 3, 2025**

**FILE ODI NUMBER: 452.25NY**               **LOCATION: NYP-VIRTUAL**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Notice of Formal Investigation |
| B | Reschedule Letter 9/3/25 |
| C | Adriana King Statement |
| D | Devon Newton Statements |
| E | Photo of Event |
| F | Photo of Event #2 |
| G | Code of Ethics and Standards for Behavior |
| H | Sharell Johnson Statement |
| I | |
| J | |
| K | |
| L | |
| M | |
| N | |
| O | |
| P | |
| Q | |

# 2025 HEARING/INVESTIGATION RECORD OF EXHIBITS
## EMPLOYEE EXHIBITS

**NAME OF CASE:** Eddy Besse

**DATE:** September 3, 2025

**FILE ODI NUMBER:** 452.25NY

**LOCATION:** NYP-VIRTUAL

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

DISCIPLINE

Sent via email

September 17, 2025          **ODI CASE NUMBER #  452.25NY**

Eddy Besse
2nd Floor
Queens Village NY 11428

Dear Mr. Besse,

Based on the decision issued by Hearing Officer Miller, the following discipline has been assessed:

**Termination of Employment in All Capacities**

You are not eligible for rehire.  Please return all of your Amtrak equipment to my office within seven (7) days of receipt of this letter.

Sincerely,

*John Lukasiewicz*

John Lukasiewicz
Superintendent Mechanical II

CC:     Jesroy Billingly
        ODI

# DECISION



452.25NY

September 16, 2025

Eddy Besse
2nd Floor
Queens Village NY 11428

Mr. Besse,

The Notice of Investigation dated August 22, 2025, states as follows:

It is alleged that on August 6, 2025, and August 13, 2025, you were observed in the attitude of sleep while on duty and under pay.

When the formal investigation commenced on September 3, 2025, you were present and represented by your IBEW Representative, Jesroy Billingy. You were afforded the opportunity to examine the Carrier's witnesses and evidence and present witnesses and evidence on your behalf. The following findings are based on the evidence and testimony presented at that investigation.

The Carrier cited the following rules, which were in effect and applicable to you and the circumstances at issue: The Amtrak Code of Ethics and Standards for Behavior.

At the hearing the Carrier called two witnesses and presented documentation along with testimony in this matter. At all times in question the Amtrak Code of Ethics, Policies and Procedures were in affect and applicable to you as they would be for all Amtrak employees.

Based on the evidence and testimony presented at that investigation and the hearing record as a whole I find that:

In support of its case, the Carrier called General Foreman David Rosales who credibly testified and stated that, he was familiar with the allegations and explained that there was an investigation into this matter. Mr. Rosales introduced into the record statements that were given from Foremen's Adriana King and Devin Newton confirming that they had witnessed you sleeping along with two pictures of the allegation displaying you in the appearance of sleep. Additionally, Mr. Rosales introduced into the record the forementioned policies that pertained to the investigation.

The Carrier called Foreman Sharell Johnson who credibly testified and stated that, she was familiar with this matter and wrote a statement regarding as to what transpired on the date in question. Ms. Johnson introduced her statement into the record which states: This morning at 2:00 a.m. I was called by Foreman Tiffany Patterson to go to Train 63 on 32 track because the electrician for that train, Eddy Beese, was sleeping instead of working the train. She said she asked if he was working the train. He said he was waiting for derails. "Because he was sleeping instead of working the

train. She said she walked through the train and found him sleeping. She woke him up to ask him why he wasn't working, why he hadn't started working the train. He said that he was waiting for derails. She told him derails were up, and he went back to sleep. I got on the train on the west end of 32 track and proceeded to walk east. When I got there, I found Eddy in the last coach. He was asleep. I woke him up and asked him if that was his train to work. "I asked him if that was his train to work. He said yes. I asked him what he was waiting for he said he was waiting for derails. I said, 'Sir, derails are up. Please get up and work your train.' That was around 2:10 a.m. When I talked to him, he still looked a little sleepy. So, I asked him to stand up and stretch cause he looked like he would fall asleep if I walked away. He did get up and he stretched, and I walked outside the train, but I called the foreman and told him that he was awake." Additionally, Ms. Johnson positively identified you sleeping when she viewed the submitted pictures.

It is reasonable to conclude that your actions violated the submitted policies.

(Please refer to Carrier's Exhibits "(C) through (H)" which substantiate their case.)

Based on the totality of the evidence before me, I find that the Carrier established by substantial evidence that you violated the submitted policies. Thus, based on the testimony and the hearing record as a whole, I find that the charges were **proven**.

Sincerely,

*Timothy M. Miller*

Timothy M. Miller, Lead Hearing Officer
Amtrak Office of Disciplinary Investigations



# EXHIBIT A

## NOTICE OF FORMAL INVESTIGATION FOR
## TERMINATION

Sent via email

August 22, 2025                                    **ODI CASE NUMBER #**

Eddy Besse
2nd Floor
Queens Village NY 11428

Dear Mr. Besse,

You are hereby advised to appear at a formal investigation relating to the matter outlined below. Please arrange to be present so we may fully investigate the facts of the incident and determine your responsibility, if any:

> **DATE:** **8/27/2025**
> **TIME:** **11AM EST**
> **PLACE:** **39-29 Honeywell St.**
> **Long Island City NY 11101**

You may also arrange to be available via audio or video conferencing.

It is alleged that on August 6, 2025 and August 13, 2025 you were observed in the attitude of sleep while on duty and under pay.

This hearing is to investigate this and any matters related thereto.

If found culpable, you will be assessed a finding of **TERMINATION OF EMPLOYMENT IN ALL CAPACITIES.**

**\*\*(Please note this hearing will be held via Teams or Zoom. The abovementioned location is a physical address that is Teams or Zoom enabled should you choose to participate in the hearing from this location. You may also participate in this hearing via Teams or Zoom from a location of your choosing. Please contact your union representative for details on how to appear via Teams or Zoom)**

1



If you would like representation and/or witnesses present at your hearing, please make arrangements in accordance with your applicable agreement. All requests for postponement of the hearing must be handled through Chris Richtarich by email at Christopher.Richtarich@Amtrak.com or via phone at 203-260-7776.

Sincerely,

Christopher T. Richtarich
Director – Labor Relations

cc.     ODI
        IBEW – Kaheem Bryant



# EXHIBIT B

<b>NOTICE OF FORMAL INVESTIGATION FOR<br>
TERMINATION</b><br>
AMENDED

Sent via email

August 29, 2025            **ODI CASE NUMBER # 452.25NY**

Eddy Besse
2nd Floor
Queens Village NY 11428

Dear Mr. Besse,

You are hereby advised to appear at a formal investigation relating to the matter outlined below. Please arrange to be present so we may fully investigate the facts of the incident and determine your responsibility, if any:

> **DATE:**    **9/3/2025**
> **TIME:**    **2:00pm EST**
> **PLACE:**   **39-29 Honeywell St.**
>            **Long Island City NY 11101**

You may also arrange to be available via audio or video conferencing.

It is alleged that on August 13, 2025 at approximately 2:00am on 32 track on train 63 at Sunnyside mechanical facility in Long Island City, New York, you were found to be in an attitude of sleep reclined with your eyes closed in a passenger seat. It is further alleged the same day at approximately 5:20am on train 119 at Sunnyside mechanical facility in Long Island City, New York, you were found to be in an attitude of sleep and not performing your assigned duties on train 79. It is also alleged that on August 6, 2025 you were assigned to service all electrical malfunctions on train 151. Instead of performing the assigned work, you were found in an attitude of sleep on a train fully reclined in a passenger seat with your eyes closed and mouth open.

This hearing is to investigate this and any matters related thereto.

If found culpable, you will be assessed a finding of **TERMINATION OF EMPLOYMENT IN ALL CAPACITIES.**

1



**(Please note this hearing will be held via Teams or Zoom. The abovementioned location is a physical address that is Teams or Zoom enabled should you choose to participate in the hearing from this location. You may also participate in this hearing via Teams or Zoom from a location of your choosing. Please contact your union representative for details on how to appear via Teams or Zoom)**

If you would like representation and/or witnesses present at your hearing, please make arrangements in accordance with your applicable agreement. All requests for postponement of the hearing must be handled through Chris Richtarich by email at Christopher.Richtarich@Amtrak.com or via phone at 203-260-7776.

Sincerely,

Christopher T. Richtarich
Director – Labor Relations

cc.     ODI
        IBEW – Kaheem Bryant

EXHIBIT C

## **EMPLOYEE STATEMENT**

Name: Adriana King                          Date: 8/13/25

SAP#: 09821457

Statement:

On the night of 8/4/25 shift 11p-7a Eddy Besse was assigned to work train 79. As he was working 79 he asked me for filters so he can changed them in the coaches at 2:30am. By 3:38am I dropped of filters at the train. Instead of changing the filter Eddy went to train 119 an slept in one of the cars. I stopped by 79 1hour after I dropped off the filters to see if he was done and noticed the box of filters were untouched and Eddy was not on the train. At 5:20am a carman notified me that Eddy was sleeping on 119. I went over to the train and saw him sleeping. I asked him to go over to 79 and change the filters immediately as the train leaves in 40 minutes. He said he was talking the foreman for 119 because he needs things. I told him you were sleeping I was watching you sleep. He says "oh you saw me?". I told him whatever you have to do on 119 can wait 79 needs to be done now so we don't have any delays, I don't understand why you're sleeping. He went and changed the filters. He finished at 5:52am. I released the train at 6:02am. Eddy sleeping at work and not following instructions is a continuous issue we as foreman have struggled with him.

Employee Signature: Adriana King

## Fields, Tyrone

| | |
|---|---|
| **From:** | Newton, Devon W |
| **Sent:** | Tuesday, August 19, 2025 8:10 AM |
| **To:** | Fields, Tyrone |
| **Subject:** | Statement Regarding Performance Concern: Electrical Craft Worker – Train 151 |

Good morning, Tyrone, please see email below.

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Newton, Devon W <Devon.Newton@amtrak.com>
**Sent:** Wednesday, August 6, 2025 5:37:00 AM
**To:** Ruiz, Salvador <RuizS@amtrak.com>; Harris, Rita <HarrisRit@amtrak.com>; Johnson, Sharell <JohnsonS@amtrak.com>
**Cc:** Khellawan, Anthony <KhellaA@amtrak.com>; Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Subject:** Statement Regarding Performance Concern: Electrical Craft Worker – Train 151

Good morning, all, on 08.06.2025, Electrical craft worker Eddy Besse was assigned to service and address all electrical malfunction on Train 151. Car 2753 arrived in SSYD with defective side doors due to a defective MGS box. Rather than prioritizing the necessary repair, Electrical craft worker Eddy chose to rest/sleep during the time allotted for resolving the issue. This decision directly impacted the operational readiness of the equipment and demonstrates a serious lapse in judgment and professionalism.

Timely and effective response to mechanical and electrical issues is critical to ensuring the safe and efficient operation of our trains. Failing to address such issues in a timely manner not only compromises service quality but also places unnecessary risk on crew and passengers.
This behavior is unacceptable and does not align with Amtrak's expectations for craft workers. Immediate corrective action is required, and further instances of neglect or dereliction of duty should result in disciplinary measures.

1

 **Outlook**

## FW: Craft worker sleeping while at work

**From** Fields, Tyrone <FieldsT@amtrak.com>
**Date** Mon 8/25/2025 8:12 AM
**To** Eisele, Jim <James.Eisele@amtrak.com>

Tyrone Fields
Superintendent 1
646-539-8993

**From:** Newton, Devon W <Devon.Newton@amtrak.com>
**Sent:** Thursday, August 21, 2025 2:50 PM
**To:** Fields, Tyrone <FieldsT@amtrak.com>
**Cc:** Heyward, Judith <HeywarJ@amtrak.com>; Khellawan, Anthony <KhellaA@amtrak.com>; Harris, Rita <HarrisRit@amtrak.com>
**Subject:** Craft worker sleeping while at work

Good afternoon, all, on the morning of 08.09.2025 on train 151 craft worker Eddy was observed sleeping ( his seat was in the reclined position with his head towards the ceiling, his eyes was closed, and his mouth was opened As he was snoring. Several attempts were made to inform him that it was time to release train 151.

Best regards

Foreman Devon Newton

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

EXHIBIT H

**EMPLOYEE STATEMENT**

Name: Sharell Johnson        Date: 8-13-25

SAP#: 31298

Statement:

This morning at 2:00 am, I was called by foreman Tiffany Patterson to go to train 63 on 32th because the electrician for that train Eddy Besse was sleeping instead of working the train. She said she walked through the train and found him sleeping. She woke him to ask him why he wasn't working. He stated he was waiting for derails, she told him derails were up and he went back to sleep. I got on the train on the west end and proceeded to walk east. When I got to the last coach I found Eddy asleep. I woke him up and asked him if this was his train to work, he said yes still half-asleep. I said why are you not working the train he said he was waiting for derails, I said "sir derails are up, please get up and work your train that was at 2:10 am. He was still looking as if he was going to fall back asleep so I told him I wanted him to get up and stretch so he doesn't go back to sleep. I left the train at around 2:17am and notified the foreman that he was awake.

Employee Signature: Sharell John

DISCIPLINE

Sent via email

September 17, 2025          **ODI CASE NUMBER #  330.25NY**

Eddy Besse
2nd Floor
Queens Village NY 11428

Dear Mr. Besse,

Based on the decision issued by Hearing Officer Miller, the following discipline has been assessed:

**Third Level, Final Discipline**

You are not eligible for rehire.  Please return all of your Amtrak equipment to my office within seven (7) days of receipt of this letter.

Sincerely,

*John Lukasiewicz*

John Lukasiewicz
Superintendent Mechanical II

CC:     Jesroy Billingly
        ODI

# 2025 HEARING/INVESTIGATION ATTENDANCE RECORD

**NAME OF CASE:** Eddy Besse

**DATE:** September 3, 2025

**FILE ODI NUMBER:** 330.25NY

**LOCATION:** NYP-VIRTUAL

| NAME<br>Please Print | TITLE<br>Please Print |
|---|---|
| Timothy M. Miller | Hearing Officer |
| Eddy Besse | Employee |
| Christopher Richtarich | Charging Officer |
| David Rosales | Carrier Witness |
| Carlton Johnson | Carrier Witness |
| Jesroy Billingy | IBEW Representative |
| Hector Negron | Silent Observer |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# 2025 HEARING/INVESTIGATION RECORD OF EXHIBITS

**NAME OF CASE: Eddy Besse**                    **DATE: September 3, 2025**

**FILE ODI NUMBER: 330.25NY**                    **LOCATION: NYP-VIRTUAL**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Notice of Formal Investigation |
| B | Reschedule Letter 9/3/25 |
| C | Email Explaining Typo |
| D | Code of Ethics and Standards for Behavior |
| E | Carlton Johnson Statement |
| F | Carlton Johnson Statement #2 |
| G | Eddy Besse Statement |
| H | |
| I | |
| J | |
| K | |
| L | |
| M | |
| N | |
| O | |
| P | |
| Q | |

# 2025 HEARING/INVESTIGATION RECORD OF EXHIBITS
## EMPLOYEE EXHIBITS

**NAME OF CASE:** Eddy Besse

**DATE:** September 3, 2025

**FILE ODI NUMBER:** 330.25NY

**LOCATION:** NYP-VIRTUAL

| EXHIBIT | DESCRIPTION |
| --- | --- |
| 1 | Notice to Management |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

# EXHIBIT E

**From:** Richtarich, Christopher T
**Sent:** Friday, August 29, 2025 12:16 PM
**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>; Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Subject:** RE: Disciplinary Charge Letter

Thank you for providing this information. I have forwarded it to relevant management. Both of your open hearings are scheduled for September 3 at 1000AM and 200PM respectively. Please note the amended charge letter for the termination charges.

Chris Richtarich

Director – Labor Relations

Amtrak

1 Massachusetts Avenue NW

Washington, D.C. 20001

Cell: 203-260-7776



**From:** Besse, Eddy N <Eddy.Besse@amtrak.com>
**Sent:** Thursday, August 28, 2025 12:07 PM
**To:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>; Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>
**Subject:** Re: Disciplinary Charge Letter

I Eddy Nathan Besse want to proceed with trial as soon as possible I have no interest in postponing my trial date let me know when I can have the soonest trial attached are my medical documents that I sent to management at Sunnyside yards via email prior to Aug 13th 2025

Get Outlook for iOS

---

**From:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Sent:** Monday, August 25, 2025 4:57:13 PM
**To:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>; Besse, Eddy N <Eddy.Besse@amtrak.com>
**Subject:** Re: Disciplinary Charge Letter

I spoke to Eddy. He doesn't want to postpone it to after the 16th. So I'm in the process of having another ibew union rep to fill in to represent him. You can still update me on the new trial date.

---

**From:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>
**Sent:** Monday, August 25, 2025 9:19 AM
**To:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>; Besse, Eddy N <Eddy.Besse@amtrak.com>
**Subject:** RE: Disciplinary Charge Letter

Your information is correct on postponements. I was looking at next week for a reschedule. I'll see if I can get a date prior to your vacation. However, if I cannot and we schedule past the 16th that is outside of contractual time limits. Do I have consent from IBEW to accommodate your schedule?

Chris

**From:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Sent:** Monday, August 25, 2025 9:09 AM
**To:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>; Besse, Eddy N <Eddy.Besse@amtrak.com>
**Subject:** Re: Disciplinary Charge Letter


Good morning. I was told by Tyrone that eddy besse's trial date is postponed until mid September. I'm going on vacation from September 4th until September 16th.

---

**From:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>
**Sent:** Friday, August 22, 2025 7:13 PM
**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>
**Cc:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Subject:** Disciplinary Charge Letter


Good evening,


Please see the attached disciplinary charge letter.


Chris Richtarich

Director – Labor Relations

Amtrak

1 Massachusetts Avenue NW

Washington, D.C. 20001

Cell:  203-260-7776



# EMPLOYEE STATEMENT

Name: CARLTON JOHNSON          Date: 6-4-25

SAP#: 00811660

Statement:

On 6-4-25 during 236 ACSES Class Mr. Eddy Besse was noticed to be sleeping during class. I woke Mr. Besse on multiple occasions but he would fall back asleep after a few minutes. My partner Mr. Ayers made the situation aware to Mr. Ruiz. Mr. Besse took the test and did not pass.

Employee Signature: _____

# EMPLOYEE STATEMENT

Name: Eddy Besse      Date: 6-12-25

SAP#: OO 834936

Statement:

As of 2024 I have been diagnosed with sleep apnea if there was any droseyness or sleeping observed on June 4th 2025 that was a direct result of this diagnosis an email informing all managers at sunnyside yards has been sent to every manager in sunnyside yards prior to June 4th 2025 non of the manager replied to the email or informed me or my union rep of any further steps not through email or in person it was my union rep who sent the email informing all the managers my union rep is Kaheem Bryant I was cc'd on said email.

Employee Signature: Eddy Besse

## EXHIBIT E

**From:** Richtarich, Christopher T
**Sent:** Friday, August 29, 2025 12:16 PM
**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>; Bryant, Kaheem I
<Kaheem.Bryant@amtrak.com>
**Subject:** RE: Disciplinary Charge Letter

Thank you for providing this information. I have forwarded it to relevant management. Both of your open hearings are scheduled for September 3 at 1000AM and 200PM respectively. Please note the amended charge letter for the termination charges.

Chris Richtarich

Director – Labor Relations

Amtrak

1 Massachusetts Avenue NW

Washington, D.C. 20001

Cell: 203-260-7776



**From:** Besse, Eddy N <Eddy.Besse@amtrak.com>
**Sent:** Thursday, August 28, 2025 12:07 PM
**To:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>; Richtarich, Christopher T
<Christopher.Richtarich@amtrak.com>
**Subject:** Re: Disciplinary Charge Letter

I Eddy Nathan Besse want to proceed with trial as soon as possible I have no interest in postponing my trial date let me know when I can have the soonest trial attached are my medical documents that I sent to management at Sunnyside yards via email prior to Aug 13th 2025

Get Outlook for iOS

---

**From:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Sent:** Monday, August 25, 2025 4:57:13 PM
**To:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>; Besse, Eddy N <Eddy.Besse@amtrak.com>
**Subject:** Re: Disciplinary Charge Letter

I spoke to Eddy. He doesn't want to postpone it to after the 16th. So I'm in the process of having another ibew union rep to fill in to represent him. You can still update me on the new trial date.

---

**From:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>
**Sent:** Monday, August 25, 2025 9:19 AM
**To:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>; Besse, Eddy N <Eddy.Besse@amtrak.com>
**Subject:** RE: Disciplinary Charge Letter

Your information is correct on postponements. I was looking at next week for a reschedule. I'll see if I can get a date prior to your vacation. However, if I cannot and we schedule past the 16th that is outside of contractual time limits. Do I have consent from IBEW to accommodate your schedule?

Chris

**From:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Sent:** Monday, August 25, 2025 9:09 AM
**To:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>; Besse, Eddy N <Eddy.Besse@amtrak.com>
**Subject:** Re: Disciplinary Charge Letter

Good morning. I was told by Tyrone that eddy besse's trial date is postponed until mid September. I'm going on vacation from September 4th until September 16th.

---

**From:** Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>
**Sent:** Friday, August 22, 2025 7:13 PM
**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>
**Cc:** Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Subject:** Disciplinary Charge Letter

Good evening,

Please see the attached disciplinary charge letter.

Chris Richtarich

Director – Labor Relations

Amtrak

1 Massachusetts Avenue NW

Washington, D.C. 20001

Cell: 203-260-7776



EXHIBIT G

## EMPLOYEE STATEMENT

Name: Eddy Besse     Date: 6-12-25

SAP#: OO 834936

Statement:

As of 2024 I have been diagnosed with sleep apnea if there was any drosevness or sleeping observed on June 4th 2025 that was a direct result of this diagnosis an email informing all managers at sunnyside yards has been sent to every manager im sunnyside yards prior to June 4th 2025 non of the manager replied to the email or informed me or my union rep of any further steps not through email or in person it was my union rep who sent the email informing all the managers my union rep is Kaheem Bryant I was cc'd on said email.

Employee Signature: Eddy Besse

# Fw: Sleep Apnea email notifying management

**Billingy, Jesroy B**  Nov 8 ⭐
To: Ebesse96@yahoo.com & 1 more ⌄

From:
Billingy, Jesroy B
Jesroy.Billingy@amtrak.com

To:
Ebesse96@yahoo.com
ibew817@ibew817.org

Date:
Nov 8 at 17:10

Get Outlook for iOS

---

**From:** Billingy, Jesroy B
**Sent:** Wednesday, September 3, 2025 9:52:35 AM
**To:** Miller, Timothy M <MillerTM@amtrak.com>
**Subject:** Sleep Apnea email notifying management

Get Outlook for iOS



# Fw: Text Messages and photos taken around time of incident

**Billingy, Jesroy B**    Nov 8 ⭐

To: ibew817@ibew817.org & 1 more ⌄

Get Outlook for iOS

---

**From:** Billingy, Jesroy B
**Sent:** Wednesday, September 3, 2025 1:49:11 PM
**To:** Miller, Timothy M <MillerTM@amtrak.com>
**Cc:** Richtarich, Christopher T
<Christopher.Richtarich@amtrak.com>
**Subject:** Text Messages and photos taken around time of incident

Get Outlook for iOS

   



🗑️ Delete    ↩️ Reply    ↩️ Reply All    ➡️ Forward    ••• More

# 5944 CUBESMART NY ELMHURST GRAND AVE

**7416 Grand Ave**
**Elmhurst, NY 11373**
**(929) 229-1991**

## INVOICE

Account Number:
**5007221462**

**Eddy Nathan Besse**
11123 201st St
Saint Albans, NY 11412
(516) 325-0999

| INVOICE ID | INVOICE DATE | DUE DATE | BALANCE |
|---|---|---|---|
| #374835 | 1/7/2026 | 1/28/2026 | $793.00 |

| Date | Unit | Item | Qty | Rate | Discount | Subtotal | Tax | Total |
|---|---|---|---|---|---|---|---|---|
| 1/28/2026 | #C1166 | Rent (1/28/2026 - 2/27/2026) | | $145.00 | 0% 35% Off | $145.00 | $0.00 | $145.00 |
| 1/28/2026 | #C1166 | Great American - $5,000.00 (1/28/2026 - 2/27/2026) | | $16.00 | | $16.00 | $0.00 | $16.00 |
| 12/28/2025 | #C1166 | Rent (12/28/2025 - 1/27/2026) | | $145.00 | 0% 35% Off | $145.00 | $0.00 | $145.00 |
| 12/28/2025 | #C1166 | Great American - $5,000.00 (12/28/2025 - 1/27/2026) | | $16.00 | | $16.00 | $0.00 | $16.00 |
| 12/11/2025 | #C1166 | Administrative Lien Fee | | $120.00 | | $120.00 | $0.00 | $120.00 |
| 11/28/2025 | #C1166 | Rent (11/28/2025 - 12/27/2025) | | $145.00 | 0% 35% Off | $145.00 | $0.00 | $145.00 |
| 11/28/2025 | #C1166 | Great American - $5,000.00 (11/28/2025 - 12/27/2025) | | $16.00 | | $16.00 | $0.00 | $16.00 |
| 11/3/2025 | #C1166 | Greater of $20.00 or 20% of the Monthly Rent | | $29.00 | | $29.00 | $0.00 | $29.00 |
| 10/28/2025 | #C1166 | Rent (10/28/2025 - 11/27/2025) | | $145.00 | 0% 35% Off | $145.00 | $0.00 | $145.00 |
| 10/28/2025 | #C1166 | Great American - $5,000.00 (10/28/2025 - 11/27/2025) | | $16.00 | | $16.00 | $0.00 | $16.00 |

| | |
|---|---|
| Subtotal | $793.00 |
| Tax | $0.00 |
| **Total** | **$793.00** |
| Payments Received | $0.00 |
| **Balance** | **$793.00** |

**Send Payments To:**
5944 CUBESMART NY ELMHURST GRAND AVE
7416 Grand Ave
Elmhurst, NY 11373



Visit site ↗



CubeSmart Storage
To: me · Tue, Dec 30, 2025 at 8:06 AM ⌄



**CUBESMART®**
**self storage**

## This is a Final Notice That Your Storage Unit is Scheduled for Sale

Dear Eddy Nathan Besse:

**URGENT:** This is your final notice before the sale of your storage unit contents.

*To prevent the sale of your storage unit contents, your outstanding balance of $632.00 must be paid in full at your CubeSmart location by* <u>cash</u>, <u>money order</u>, <u>cashier's check</u>, *or* <u>certified check</u> <u>immediately</u>.

Payment must be made prior to the scheduled disposal sale date.

If you have any questions, please contact us immediately.

Sincerely,

5944 CUBESMART NY ELMHURST GRAND AVE

STORE5944@CUBESMART.COM

(929) 229-1991



Download the CubeSmart Mobile App

Easy to manage. Anytime. Anywhere.
Gate code access, bill pay, and more.

Get the app

Please do not reply to this email, as this inbox is not monitored. If you need additional assistance, please email your store manager at STORE5944@CUBESMART.COM or call **800-800-1717** to speak to a Customer Care specialist.

Reply ↩        Forward ↪

**CubeSmart Storage**
To: me · Wed, Jan 7 at 8:07 AM ∨



## CUBESMART
### self storage

Hello Eddy Nathan Besse:

Your bill due on 1/28/2026 in the amount of $793.00 is now ready. Please see the attached PDF.

**Easy Payment Options**

CubeSmart wants to make your storage experience stress-free, including paying your bill. We're happy to provide easy payment options to suit you:

- **Bank Account Payments for AutoPay:** The most convenient way to pay. Simply enter your bank information once and your payment will automatically pull from your account each month.

- **Other Payment Options:** You can pay with major credit cards, cash, or check in-store, by credit card via automated phone system, or with check or money order by mail. Please make all checks and money orders payable to: CubeSmart.

**Register online in Customer Center to set up your payment method.** If you have questions about payment, please contact your Store Manager.



### Set Up Bank Account Payments for AutoPay
Make easy monthly payments right from your bank account.

**Set Up Now**

Please do not reply to this email, as this inbox is not monitored. If you need additional assistance, please emailyour store manager at STORE5944@CUBESMART.COM or call (929) 229-1991 to speak to a Customer Care specialist.

□ CORRECTED (If checked)

| PAYER'S name, street address, city, state and ZIP code | | 1 Unemployment compensation | OMB No. 1545-0120 | **Certain Government Payments** |
|---|---|---|---|---|
| U.S. Railroad Retirement Board<br>Sickness and Unemployment Benefits Section<br>844 North Rush Street<br>Chicago, IL 60611-2092 | | $ 6633.00 | **2025** | |
| | | 2 State or local income tax refunds, credits, or offsets | Form 1099-G | |
| PAYER'S Federal identification number<br>36-3553030 | Recipient's identifying number<br>***-**-4436 | 3 Box 2 amount is for tax year | 4 Federal income tax withheld | **Copy B**<br>For<br>Recipient |
| RECIPIENT'S name, street address, city, state and ZIP code | | | 6 Taxable grants | |
| E N BESSE<br>146-11 225ST STREET<br>SPRNGFLD GDNS NY 11413-3842 | | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. | | |

Form **1099-G**    (Keep for your records.) Department of the Treasury-Internal Revenue Service

## Instructions to Recipient

**Box 1** - Shows the total unemployment compensation paid to you this year by the Railroad Retirement Board. This amount is taxable income to you. The gross amount shown does not reflect the repayment of any unemployment compensation during the tax year. You may report repayments on your tax return. For more information, see the instructions for your Federal income tax return. If you expect to receive these benefits in the future, you can request the payer to withhold Federal income tax from each payment. Or you can make estimated tax payments, using **Form 1040-ES**, Estimated Tax for Individuals.

**Box 2** - Shows refunds, credits or offset of State or local income tax you received. If there is an entry in this box, it may be taxable to you if you deducted the tax paid as an itemized deduction on your Federal income tax return. See the instructions for Forms 1040 or 1040A for more information.

**Box 3** - This identifies the tax year of the refund shown in Box 2.

**Box 4** - Shows backup withholding or withholding you requested on unemployment compensation. Generally, a payer must backup withhold on certain payments at a 30% rate if you did not give your taxpayer identification number to the payer. See **Form W-9**, Request for Taxpayer Identification Number and Certification, for information on backup withholding. **Include this on your income tax return as tax withheld.**

**Box 6** - Shows the amount of taxable grants received by you from the Federal, state, or local government.

**If you have questions about this tax statement, contact the RRB at 1-877-772-5772.**

Exhibit 1 – May 19, 2025 Statement (Initial Report)
This document reflects the report I made regarding workplace conduct and safety concerns involving
management prior to any disciplinary action.

Foreman in question: Devon Newton   Incident: 5/11/25

— came in for 3rd shift overtime and had to work 2 trains but the second train didn't come to the yard till 6:00am by this time the first train was done being worked. When I went to the train at 6:03am I needed to plug up the consist I told the foreman Devon that I wouldn't be able to work the train so he told me to hurry-up the cleaners need power. I pluged up one side then when I got to the east end to plug up the other side Devon was waiting for me he asked me how long it would take till I'm done I told him 20 mins and he said that is too long when I was finishing up and had one more wire left which was the com cable he said "forget about the com cable power up the car and plug in the com after because the cleaners need power" so I said why would I do that that is unsafe he said "whatever" I powered up the car and went home



Exhibit 2.1 – Safety / Blue Flag Evidence
Photo documentation of reported safety concern. of blue flag not being up after being told it was and workers on train blue flag was up on East of consist but wasnt up on West of train



Exhibit 2.2 – Safety / Blue Flag Evidence
Photo documentation of reported safety concern. of blue flag not being up after being told it was and workers on train blue flag was up on East of consist but wasnt up on West of train



Exhibit 2.3 – Safety / Blue Flag Evidence
Photo documentation of reported safety concern. of blue flag not being up after being told it was and workers on train blue flag was up on East of consist but wasnt up on West of train



On 6/29/25 at 2:52 AM, I walked over to 36 track and I called Danny to ask if D-Rails went up. He told me "D-Rails had been up a long time ago." I then said "okay, I'm going to start warning the train". Before I went and warned the train, I walked over to the west end because that was the end I was closest to just make sure D-Rails were really up. And come to find out, D-Rails were walking down. So I gave Danny a call back and I told him "D-Rails are currently down but I see a blue light in the motor. the flag is down and the D-Rails are down also there's no blue light on the track." He said "are you sure? that doesn't make sense. Are you sure you're on the right track?" He kind of didn't spring into action instead he interrogated me, almost like he didn't want to bother coming out to make sure D-Rails were up. To me something like D-Rails is something you don't hesitate. Even if it's a false alarm. To me you should you should make your way out and inspect D-Rails. So you can be safe rather than sorry, because D-Rails is one of those things where somebody can get hurt or lose their Job. Danny finally agreed to come over. to track 36. I sent him pics of D-Rails and flag. being down them I called him back and asked him to let me know when D-Rails are up.

1 of 3

is one of them ... their job ... I sen... turn
hurt or lose ... to track 36. being down ... him to
come over and flag. being ... asked him to
D-Rails ... back and ... D-Rails are up.
1 of 3

**Exhibit 2.6 – Safety Report Submission**
**Evidence showing safety concerns were reported.**

I started walking the outside of the train
consist and noticed people were inside the train
working so I jumped on the train and informed
people to stop working because D-Rails were down
the first person I stopped told me that they
were told D-Rails were up. I then told
him D-Rails are down on the west End. he
told me he was. under the impression D-Rails
were up on both ends. I kept walking
the train and when I got to the dinner
car and I saw someone from commisary
unloading food on the car. I told him to stop
what he was doing because D-Rails are down
he said someone told him D-Rails were up I told
him that is not true the west end does not have
D-Rails then I saw another woman in the
Dinner and told her D-Rails were down and
not to work on train until further notice she
said there were two other people on the train and
that she would inform them. In total I there
were 5 persons working on the train under
the assumption that D-Rails were up when there
was no D-Rails on west end (6 persons
if you count person in the motor that was
working). I then walked back to the west
end of track 36 to check for D-Rails they

2 of 3

were put up. So Danny came back and put D-Rails up on the west end however he never informed me or anyone else as if he was trying to cover his mistake. which I think is inappropriate because I would have never known D-Rails were up if I never went out and checked for myself. he just put up D-Rails and never informed anyone. This incident happened on June 29th at 2:52 am on a Sunday. The shift started Saturday June 28th at 11 pm the foreman I had that night was Danny

Eddy Besse
00834936
Electrician
Sunny side yards

X Eddy Besse

Date: 7-1-2025

3 of 3



Exhibit 2.8   Safety Report Submission
Evidence showing safety concerns were
reported.



Tue, Jul 1 at 10:02

I brought your statement to Tyrone

Thank you



No problem

Tue, Jul 1 at 12:42

+        iMessage

**Exhibit 3.1 – April 1 Medical Disclosure Email**

Email notifying management of my sleep apnea condition. (no correspondence from management)



**Fw: Eddy Besse**   📎 1

📁 Star ⭐

**Bryant, Kaheem I**
Kaheem.Bryant@amtrak.com   ...

To: Fields, Tyrone FieldsT@amtrak.com
Ruiz, Salvador RuizS@amtrak.com
Hull, Felix HullF@amtrak.com
Primiani, Anthony F Anthony.Primiani@amtrak.com
Rosales, David David.Rosales@amtrak.com
Ayers, Darryl AyersD@amtrak.com
Lamptey, Emmanuel Emmanuel.Lamptey@amtrak.com
Khellawan, Anthony KhellaA@amtrak.com
Blanco, Mikhail Mikhail.Blanco@amtrak.com
Harris, Rita HarrisRit@amtrak.com
Gillard, Kyle GillarK@amtrak.com
King, Shamel Shamel.King@amtrak.com
Lukasiewicz, John John.Lukasiewicz@amtrak.com
Martinez-Lieberman, Jacqueline
MartinJacq@amtrak.com
Johnson, Carlton Carlton.Johnson.1@amtrak.com

Cc: You Eddy.Besse@amtrak.com

Tuesday, April 1, 12:35

I have an electrician who transferred here to sunnyside not too long ago. He is diagnosed with severe sleep apnea. I spoke to labor relations and the medical

↩ ⌄ Reply All   ✉ 🗑 🗄 ...

📧 Mail    📅 Calendar    🔲 Apps

**Exhibit 3.2 – April 1 Medical Disclosure Email**

Email notifying management of my sleep apnea condition. (no correspondence from management)

Ruiz, Salvador RuizS@amtrak.com

Hull, Felix HullF@amtrak.com

Primiani, Anthony F Anthony.Primiani@amtrak.com

Rosales, David David.Rosales@amtrak.com

Ayers, Darryl AyersD@amtrak.com

Lamptey, Emmanuel Emmanuel.Lamptey@amtrak.com

Khellawan, Anthony KhellaA@amtrak.com

Blanco, Mikhail Mikhail.Blanco@amtrak.com

Harris, Rita HarrisRit@amtrak.com

Gillard, Kyle GillarK@amtrak.com

King, Shamel Shamel.King@amtrak.com

Lukasiewicz, John John.Lukasiewicz@amtrak.com

Martinez-Lieberman, Jacqueline MartinJacq@amtrak.com

Johnson, Carlton Carlton.Johnson.1@amtrak.com

Cc: You Eddy.Besse@amtrak.com

Tuesday, April 1, 12:35

I have an electrician who transferred here to sunnyside not too long ago. He is diagnosed with severe sleep apnea. I spoke to labor relations and the medical department and was informed that he does not fall under the sleep apnea policy or restrictions and does not have to report it to the medical department. He wants management to be aware of this to avoid any future issues or possible discipline if caught sleeping. His name is Eddy Besse and he is cc'd in this email.

⤺ ∨ Reply All ✉ 🗑 🗄 ⋯

Mail | Calendar | Apps

✕ Scan - SLEEP STUDY UNATTENDED - Oct...
PDF - 195 KB ⬆

 **Community** Health Network

**Sleep-Wake Disorders Center**

| Anderson Campus | East Campus | Kokomo Campus | North Campus | South Campus |
|---|---|---|---|---|
| 1515 North Madison Ave | 1400 N Ritter Ave | 3500 S Lafountain St | 7250 Clearvista Dr | 333 E County Line Rd |
| Main Hospital, Fifth Floor | Suite 481 | Cardiac Svcs Entrance | Suite 350 | Suite D |
| Anderson, IN 46011 | Indianapolis, IN 46219 | Kokomo, IN 46902 | Indianapolis, IN 46256 | Greenwood, IN 46143 |
| (765) 298-5455 | (317) 497-1ZZZ | (765) 776-5120 | (317) 497-1ZZZ | (317) 497-1ZZZ |

## HOME SLEEP APNEA TEST

| | | | | | | |
|---|---|---|---|---|---|---|
| Patient Name: | BESSE, EDDY | Test Date: | 10/3/2024 | Height: | 70.0 in. |
| CSN#: | 10210601055-517730432 | Test Site: | CHE | Weight: | 314.0 lbs. |
| Date of Birth / Age: | 4/27/1996 / 28 yrs. | | | BMI: | 45.0 kg/m² |
| Referred By: | Alaa Shammah, MD | Scoring Tech: | AJohnson RRT RPSGT | Neck Circumference: | 18.0 in. |
| Primary Care: | N/A | | | Gender: | Male |
| Interpreting Physician: | Alaa Shammah, MD | | | Epworth Sleepiness Scale: | 16/24 |
| Indications for study: | G47.10 (ICD-10-CM) - Hypersomnia, unspecified | | | | |
| Technical Comments: | | | | | |

| Overall AHI* | Overall RDI | % time < 90% SpO2 | Mean SpO2 | % time snoring |
|---|---|---|---|---|
| 110.8 | 110.8 | 38.4 | 89 | 29.0 |

**SUMMARY:**
An overnight Home Sleep Apnea Test was performed on 10/3/2024.

**Sleep Architecture:** The patient underwent a one night home sleep apnea test (with effort monitoring) from 2:53:51 AM - 8:03:51 AM with a Total Recording Time (TRT) of 310.0 minutes, Time In Bed (TIB) of 310.0 and a Total Sleep Time (TST) of 307.5 minutes.

**Respiratory Events:** Hypopneas were scored using AASM definitions VII.4.A (4% desaturation). **Overall Apnea Hypopnea index (AHI) was 110.8/hr.** Mean oxygen saturation was 89%. Oxygen saturation minimum was 60%. Duration of time with an oxygen saturation ≤ 88% (minutes) was 72.0 minutes. Central apneas comprised 0.00% of total apneas and hypopneas. Mixed apneas comprised 0.00% of total apneas and hypopneas. Obstructive apneas and hypopneas comprised 100.00 % of the total.

**Heart Rate Data:** The heart rate during sleep ranged from 27 to 123 beats per minute.

This was a technically adequate study.

**IMPRESSION/RECOMMENDATIONS:**

**IMPRESSION:**
1.     Severe obstructive sleep apnea (overall AHI/REI 110.8/hr) with associated hypoxemia

**RECOMMENDATIONS:**
- Untreated obstructive sleep apnea (OSA) is associated with negative health outcomes, including increased risk for cardiovascular events. Treatment of OSA is recommended, especially if moderate or severe OSA, symptomatic, or medical conditions associated with untreated sleep apnea are present. Treatment of sleep apnea should be utilized every time asleep (including naps). Positive airway pressure (PAP) therapy is generally the most efficacious treatment and is the recommended front line therapy, especially if moderate or severe OSA is present. Other treatment options may include an oral appliance, surgical intervention, positional therapy (i.e . avoidance of sleeping supine) if sleep apnea only present in supine position, and/or lifestyle modifications.
- Based on the patient's sleep study findings and giving the severity of his obstructive sleep apnea and hypoxemia with the possible need of high positive airway pressure to treat his OSA, auto-titrating PAP (APAP) is contraindicated. Contraindications to APAP include opiate use, CHF, ESRD, COPD, recent stroke, or other potential risk for frequent central apneas, hypoventilation, or hypoxemia. The next recommended step in treatment of sleep apnea is an **in-lab PAP titration study.**
- Lifestyle modifications, including weight loss if overweight or obese, avoidance of tobacco, and avoidance/limitation of respiratory depressing substances/medications (such as alcohol and opiates), are recommended.

Sleepiness safety precautions, good sleep habits, and obtaining adequate sleep (at least 7 hours per night for adults) should be followed. The patient should not drive or participate in activities requiring a high level of attention when drowsy.

Electronically signed by: Alaa Shammah
Signed date and time: 10/19/2024                    9:32 PM

Page 1 of 2

---

Patient Name: BESSE, EDDY     CSN #: 007644920     Date of Study: 10/3/2024

## HOME SLEEP APNEA TEST

### DETAILED RESULTS

**Test Architecture Data**

| | |
|---|---|
| Lights off clock time: | 2:53:51 AM |
| Lights on clock time: | 8:03:51 AM |
| Total Recording Time (TRT): | 310.0 min |
| Time in Bed (TIB): | 310.0 min |
| Total Sleep Time (TST): | 307.5 min |

**Data Failure**

| | |
|---|---|
| HR fail during SLP | 6.2 min |
| SaO2: total duration of fail | 7.9 min |
| Resp fail duration during SLP | 0.0 min |
| Effort fail duration during SLP | 0.0 min |
| Flow fail duration during SLP | 0.0 min |

**Heart Rate Data**

**Snore Data**

 Open M365 Copilot

**Oximetry Data**

| Baseline SaO2 %: | 95 | Dur. (min) | | % TIB |
|---|---|---|---|---|
| Average % | 89 | <90 % 118.9 | | 38.4 |
| Min SaO2% (> 2 sec) | 62 | <85 % 34.0 | | 11.0 |

**Respiratory Data**

| | # | Duration (sec) | Index (#/hr TST) | NREM Index | REM Index |
|---|---|---|---|---|---|
| Obstructive Apneas | 463 | 55.0 | 90.3 | 90.3 | |
| Central Apneas | 0 | 0.0 | 0.0 | 0.0 | |
| Mixed Apneas | 0 | 0.0 | 0.0 | 0.0 | |



‹

☐ Star ⭐

**You**
Eddy.Besse@amtrak.com                                    ⋯

To: **Bryant, Kaheem I** Kaheem.Bryant@amtrak.com
**Fields, Tyrone** FieldsT@amtrak.com
**Ruiz, Salvador** RuizS@amtrak.com
**Hull, Felix** HullF@amtrak.com
**Primiani, Anthony F** Anthony.Primiani@amtrak.com
**Rosales, David** David.Rosales@amtrak.com
**Ayers, Darryl** AyersD@amtrak.com
**Lamptey, Emmanuel** Emmanuel.Lamptey@amtrak.com
**Khellawan, Anthony** KhellaA@amtrak.com
**Harris, Rita** HarrisRit@amtrak.com
**Gillard, Kyle** GillarK@amtrak.com
**King, Shamel** Shamel.King@amtrak.com
**Lukasiewicz, John** John.Lukasiewicz@amtrak.com
**Martinez-Lieberman, Jacqueline**
MartinJacq@amtrak.com
**Johnson, Carlton** Carlton.Johnson.1@amtrak.com
**Blanco, Mikhail** Mikhail.BlancoOLD@amtrak.com
Sunday, July 20, 00:45

☺

📄 Scan - SLEEP STUDY UNATTENDED - Oct 1...    ⋮
PDF - 195 KB

Document/PDF of sleep study results where my doctor
diagnosed me with sleep apnea in October of 2024

↩ ⌄ Reply All                    ✉ 🗑 🗄 ⋯

✉                    2                    ▦
Mail                Calendar              Apps

Primiani, Anthony F Anthony.Primiani@amtrak.com

Rosales, David David.Rosales@amtrak.com

Ayers, Darryl AyersD@amtrak.com

Lamptey, Emmanuel Emmanuel.Lamptey@amtrak.com

Khellawan, Anthony KhellaA@amtrak.com

Harris, Rita HarrisRit@amtrak.com

Gillard, Kyle GillarK@amtrak.com

King, Shamel Shamel.King@amtrak.com

Lukasiewicz, John John.Lukasiewicz@amtrak.com

Martinez-Lieberman, Jacqueline
MartinJacq@amtrak.com

Johnson, Carlton Carlton.Johnson.1@amtrak.com

Blanco, Mikhail Mikhail.BlancoOLD@amtrak.com

Sunday, July 20, 00:45

☺

Scan - SLEEP STUDY UNATTENDED - Oct 1...
PDF - 195 KB

Document/PDF of sleep study results where my doctor
diagnosed me with sleep apnea in October of 2024
Get Outlook for iOS

• • •

🗁 Star ⭐



MO  Microsoft Outlook                          Jul 20
    To King, Shamel and Blanco, Mikhail        • • •

                                               ☺

↩ ∨ Reply All          ✉  🗑  🗄  • • •

EML - 221 KB

✉           2           88
Mail     Calendar      Apps

01:45

**CONFIDENTIAL - Leave Eligibility Notice: BESSE, EDDY N. _00834936**

📎 2

**LeaveManagement**     Aug 22
To ebesse96@yahoo.com and You     ...

📄 **Besse, Eddy N...** ⋮     📄 **SELF - Intermi...** ⋮
PDF - 317 KB             PDF - 400 KB

📎 2 attachments (717 KB)      ⬇ **Save attachments**

This email has an attachment regarding EDDY N. BESSE. If you are NOT Eddy, then you have received this email in error. Please reply to this email stating that you have this email incorrectly.

However, If you are Eddy and you have any questions, please contact Leave Management at 1-888-694-7372.

Please have the case and letter number available when referring to this case. The case and letter number can be located on the attachment under the Amtrak logo.

Received, thank you.     I have received this email.     Co



⬆       **Add a Comment...**       👍

✕        Besse, Eddy N._Not_08222025...

National Railroad Passenger Corporation
Leave Management
405 N. King Street, Suite 4100
Wilmington, DE 19801

 **AMTRAK**

**FMLA Eligibility Notice**
August 22, 2025                    Case #98283, Letter #195104

EDDY N. BESSE
22005 JAMAICA AVE, 2ND FL
QUEENS VILLAGE, NY 11428

Dear Eddy N. Besse (SAP# 00834936),

The Family and Medical Leave Act of 1993 (FMLA) provides up to 12 weeks of job protected leave for eligible employees to care for themselves or family members with a serious health condition. Based on your recent absence beginning on **AUGUST 15, 2025**, we have verified that **you have met FMLA eligibility by having at least 12 months of service and working a minimum of 1,250 hours in the last 12 months immediately preceding the leave.**

Therefore, you are receiving a Department of Labor Medical Certification form. The Certification of Health Care Provider form must be completed by the treating healthcare provider and returned by **9/12/2025** via the address, fax number, or email address provided below:

   405 N. King Street, Suite 4100
   Wilmington, DE 19801
   Fax: 202-799-6691
   Email: LeaveManagement@Amtrak.com

Failure to provide timely notification and the required documentation within the required time frame may result in your leave being denied and subject you to action consistent with Amtrak attendance policies.

Once we obtain the information from you as . we will inform you within five (5) business days whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement. In an effort to fully validate the medical certification, we may obtain a second opinion, and if necessary, a third opinion.

In accordance with Amtrak's Short Term Disability (STD) Income Leave Policy (7.29.3) Section 4.7.3, STD income will run concurrently with leave under the Family and Medical Leave Act of 1993 (FMLA) unless information is provided indicating the medical condition does not qualify.

Your supervisor will be notified by copy of this letter.

**The case number assigned to this application is not an approval number. In the instance you use this number to mark off before your FMLA leave is approved. you may be subject to discipline, up to and including termination.**

Please call the HR Employee Resource Center at 1-888-694-7372 or send email to LeaveManagement@Amtrak.com if you have any questions.

Respectfully,

Leave Management
Human Resources - Building Success Through People
Fax: 202-799-6691



## Exhibit 4.1 - Change in Disciplinary Pattern

Prior to May 19, 2025, I had no record of disciplinary actions despite submitting multiple statements regarding workplace conditions.

Following my report on May 19, 2025, I was subjected to a series of disciplinary allegations within a short time frame, including allegations on June 4, August 6, and August 13.

This reflects a sudden change in treatment following my report.



Time

**King, Adriana M**
To You and Johnson, Sharell

08:02

It is 8:00am on 8/13/25 my schedule for 8/12/25 will be closing now and you will not have your time put in as you did not pay yourself during your 8 hour shift.



Ok, thank you.     Thank you for the clarification.     Ok, t

Reply All

Mail     Calendar     Apps



**King, Adriana M**  08:02
To You and Johnson, Sharell  ...

It is 8:00am on 8/13/25 my schedule for 8/12/25 will be closing now and you will not have your time put in as you did not pay yourself during your 8 hour shift.



**You**  BE
Eddy.Besse@amtrak.com  ...

To:  King, Adriana M  Adriana.King@amtrak.com

Cc:  Johnson, Sharell  JohnsonS@amtrak.com

Wednesday, August 13, 08:08

@King, Adriana M  You told me you didn't give me work orders that was at 6am this morning and my best bet was to get the other Forman to give me work orders didn't know you gave me work orders or that you were keeping it open until 8am but okay maybe we can try again tonight if you are on shift tonight as I'm coming in for overtime

Get Outlook for iOS

...



↰ ∨ Reply All

Mail  Calendar  Apps



**Re: Time**

**King, Adriana M**                                          08:02
To You and Johnson, Sharell

It is 8:00am on 8/13/25 my schedule for 8/12/25 will be closing now and you will not have your time put in as you did not pay yourself during your 8 hour shift.

**You**                                                      08:08
To King, Adriana M and Johnson, Sharell

@King, Adriana M You told me you didn't give me work orders that was at 6am this morning and my best bet was to get the other Forman to give me work orders didn't know you gave me work orders or that you were keeping it open until 8am but okay maybe we can try again tonight if you are on shift tonight as I'm coming in for overtime

Get Outlook for iOS



New Message ↓

Reply All

Mail        Calendar        Apps

**Exhibit 4.5** – Work Order Communication
Communication reflecting request for work orders and lack of completion.

@King, Adriana M  You told me you didn't give me work orders that was at 6am this morning and my best bet was to get the other Forman to give me work orders didn't know you gave me work orders or that you were keeping it open until 8am but okay maybe we can try again tonight if you are on shift tonight as I'm coming in for overtime

Get Outlook for iOS

· · ·

**New Message** ↓



**King, Adriana M**                                    08:11
To You                                                   · · ·

I told you that I did not get a chance to put in another work order for you to pay yourself for yesterday as you did not pay yourself yesterday as well and all schedules were closed by 7:00am.

· · ·

**You**                                                 08:12
To King, Adriana M                                      · · ·



↩ ∨  Reply All          ✉  🗑  🗄  · · ·

tell me when you are closing work order not when u give

Mail          Calendar          Apps

~~again tonight if you are on shift tonight as I'm coming in~~ for overtime

Get Outlook for iOS

...

**King, Adriana M**      Aug 13
To You      ...

I told you that I did not get a chance to put in another work order for you to pay yourself for yesterday as you did not pay yourself yesterday as well and all schedules were closed by 7:00am.

...

**You**      Aug 13
To King, Adriana M      ...

That doesn't take away from what I just said. Also why tell me when you are closing work order not when u give them

Get Outlook for iOS

...

    ↰ ⌄ Reply All      ✉   🗑   🗄   ...

Mail      Calendar      Apps



# Fw: Sleep Apnea email notifying management

**BB** **Billingy, Jesroy B**    ⊘ Nov 8 ⭐
To: Ebesse96@yahoo.com & 1 more ⌄

From:
Billingy, Jesroy B
Jesroy.Billingy@amtrak.com

To:
Ebesse96@yahoo.com
ibew817@ibew817.org

Date:
Nov 8 at 17:10

Get Outlook for iOS

---

**From:** Billingy, Jesroy B
**Sent:** Wednesday, September 3, 2025 9:52:35 AM
**To:** Miller, Timothy M <MillerTM@amtrak.com>
**Subject:** Sleep Apnea email notifying management

Get Outlook for iOS

| 🗑 | ↩ | ⤺ | ➡ | ••• |
|----|----|----|----|-----|
| Delete | Reply | Reply All | Forward | More |

Exhibit 4.8 – Evidence Submission (Union Representative)
Proof that multiple documents were submitted prior to the hearing.



**Fw: Text Messages and photos taken around time of incident**

BB **Billingy, Jesroy B**     Nov 8 ⭐
To: ibew817@ibew817.org & 1 more ⌄

Get Outlook for iOS

---

**From:** Billingy, Jesroy B
**Sent:** Wednesday, September 3, 2025 1:49:11 PM
**To:** Miller, Timothy M <MillerTM@amtrak.com>
**Cc:** Richtarich, Christopher T
<Christopher.Richtarich@amtrak.com>
**Subject:** Text Messages and photos taken around time of incident

Get Outlook for iOS

🗑 Delete     ↩ Reply     ↩↩ Reply All     ⇨ Forward     ••• More

< 11



**D**

**Devon**

Train car 21 west end door will open and not close

Exhibit 5 – 5:19 a.m. Work Activity Shows active work and request for materials immediately prior to the alleged time of incident.

e most west car

oreman's office

Wed, Aug 13 at 05:19

**::** 10 Photos



Need 8 filters for two cars Chanel 1 on refrigerator reading 52 degrees

Correction channel 4 is reading 52 degrees*

Give me a call

+    Text Message · SMS    🎤

Exhibit 6.1 Inconsistent Account of Arrival (Walk vs Ride)
Witness initially stated she walked to the train location and later stated she was dropped off, creating inconsistency in timeline and observation.

Mr. Miller: You're on mute, Ms. Johnson.

Ms. Johnson: We were working for the 12th, but at the time it happened at 2:00-something in the morning, that would be the 13th. But it was for the working night of the 12th, going into the 13th. So, that's why it's stated that, for the time of the morning that it happened.

Mr. Beese: Give me one second. Give me one moment. So, when you were notified that I was allegedly sleeping, where were you located?

Ms. Johnson: I was in the foreman's office. And I left the foreman's office. I was told to walk to the back of 36 to find you immediately. But I started from the front of 32 to find you immediately. I started from the front of 32, walked to the back. I almost thought you weren't there 'til I got to the last car.

Mr. Beese: So, when you say the front, you're saying like the most east car or west car?

Ms. Johnson: The west end of the train. The west end of the train. And I proceeded to walk east to the back where I found you at in the last car.

Mr. Beese: So, you're telling me from 2:00 a.m. you got yourself ready to come out to the yard and you walked the whole consist. So, you walked to the train and walked the whole consist all in 10 minutes?

Ms. Johnson: Sure did, because I'm not checking for anything. I'm just walking through the cars. It doesn't take that long to walk through 10 cars. Just walking through. I'm not doing an inspection.

Mr. Beese: Well, I'd have to argue that it takes longer than 10 minutes to get from the foreman's office.

Mr. Richtarich: Objection, argumentative, badgering, not a question. We're getting a little silly here.

Mr. Beese: That's all.

Ms. Johnson: And to be clear, let me correct it, I did not walk from the office. I was dropped off to the west end of 32 track.

Mr. Beese: That's all.

Mr. Miller: All right, thank you, Mr. Beese. Okay, Mr. Richtarich, do you have

Exhibit 6.2 – Unclear Response Timing ("A Good Minute")
Witness described response time as "a good minute" without confirming a specific duration, resulting in an imprecise estimate.

Mr. Beese:        Can you give me an exact time?

Ms. Johnson:      A good minute. I said one good minute. And when I asked you to get up and stretch, whether you did a physical stretch or you just got up out the seat was enough. That was stretching. Getting up out the seat.

Mr. Beese:        So, if I understand correctly, you're saying it took 60 seconds for me to respond to you.

Ms. Johnson:      Is that a minute?

Mr. Beese:        I'm sorry?

Ms. Johnson:      Is that a minute?

Mr. Beese:        Sixty seconds?

Ms. Johnson:      A minute.

Mr. Beese:        Well, that's what I'm asking you. Sixty seconds is a minute.

Ms. Johnson:      Is that a minute?

Mr. Beese:        So, you're answering my question with a question?

Mr. Miller:       No, she answered your question several times. She said about a minute. A good minute. Do you want seconds in tenths of a second?

Mr. Beese:        I'd like to understand **[inaudible – crosstalk] [01:27:05].**

Mr. Miller:       Hang on. Time out. We lost the witness. Hang tight. Hang on. She dropped off. I don't mean to interrupt you.

Mr. Beese:        I understand, but everything has to be fair and procedural.

Mr. Miller:       Okay. Ms. Johnson's back. Okay, your next question?

Mr. Beese:        Just give me one second.

Mr. Miller:       Sure.

Mr. Beese:        And just to clarify, this is for August 13th, at 2:00 in the morning, 2:10 in the morning?

Exhibit 6.3 – Unclear Response Timing ("A Good Minute")
Witness described response time as "a good minute" without confirming a specific duration, resulting in an imprecise estimate.

| | |
|---|---|
| Mr. Richtarich: | I'm gonna object. So, again, the charge is assuming the attitude of sleep, not necessarily confirming sleeping one way or the other. Words mean things. The charge letter is very specifically written. She has testified that she believes that Mr. Beese has been assuming the attitude of sleep when she walked onto that train. This is asked and answered, badgering the witness, and frankly incorrect reading of what the charge letter says. |
| Mr. Miller: | Right. And also, you mentioned, "How do you know I wasn't praying?" Now you just said that you weren't praying. |
| Mr. Beese: | Well, I'm just asking how could you be so sure I was really sleeping and it wasn't a time of prayer. I mean, that's all. I didn't substantiate that I was praying, not praying, but how do you know I wasn't praying? |
| Mr. Miller: | She answered the question. |
| Mr. Beese: | But I mean, from me to you, it's not substantiated that I really was sleeping. It's just alleged, but there's no hardcore proof. Hardcore proof is like you shake somebody and then they wake up. But she just talked. Now, let me ask you another question, Ms. Johnson. How far away from me were you? |
| Ms. Johnson: | I was standing real close to you. |
| Mr. Beese: | What is real close, 5 ft, 6 ft? |
| Ms. Johnson: | Right next to you. About a good 2 ft from you. Right next to you. As you sat in the chair, I walked past and I looked and I said, Eddy said, "Yes." I said, "Is this your train to work?" You said, "Yes." I said, "So, why are you not up working your train?" "I'm waiting for derails." I said, "Sir, derails are up. Please get up and work your train." "Okay," you said, and you looked sleepy. You know, when someone looks sleepy, I'm quite sure we're all familiar with when someone looks sleepy. Sure. That was what I thought. And I asked you, I said, "Please get up and stretch for me because you look like you're gonna fall asleep," and I walked away. You said, "Okay." And you got up and stretched, and I left. |
| Mr. Beese: | I just wanna interject. I was not stretching. I did not get up and stretch. But also, I have another question. I have another question. Now, what was the response time when you called my name? |
| Ms. Johnson: | About a good minute. |

Exhibit 6.4 Inconsistent Frequency Testimony ("I Don't Know" → "10+")
Witness initially stated he did not know how many times the alleged conduct occurred, then later stated "more than 10 times."

**97666_E_ Beese 330_25NY HEARING AUDIO**
**Mr. Miller, Mr. Besse, Mr. Richtarich, Mr. Johnson, Mr. Negron, Mr. Billingy, Mr. Rosales**

26

Mr. Richtarich: Thank you. I have no further questions for Mr. Johnson.

Mr. Miller: Okay. Thank you, Mr. Richtarich. Okay, Mr. Billingy. Do you have any cross-examination for Mr. Johnson?

Mr. Richtarich: I think they might be frozen again.

Mr. Miller: Okay. Wait, I just saw – can you guys hear me okay?

Mr. Billingy: Yes. Yeah.

Mr. Miller: Yeah, you guys froze for a second. Okay. Mr. Billingy, do you have any cross-examination for Mr. Johnson?

Mr. Billingy: Yes.

Mr. Miller: Okay.

Mr. Billingy: Approximately how much time did – approximately how much time did he fall asleep?

Mr. Johnson: Multiple occasions. I don't have a specific number.

Mr. Billingy: More than 10 [audio cuts out] [01:01:27]?

Mr. Johnson: I –

Mr. Miller: I'm sorry. I'm sorry. Could you repeat that question? You broke up there.

Mr. Billingy: I'm saying if it's more than 10 times, less than 10 times. Just a normal question.

Mr. Johnson: Multiple occasions. I would say more than 10.

Mr. Billingy: Can you recall any times, specific times, that you had noticed?

Mr. Johnson: Can you repeat that?

Mr. Billingy: If you can recall any specific times because, in both statements, it never referenced any time at all. I'm just asking if any specific time you were aware that he was asleep.

Mr. Johnson: You're asking me of specific hour and a minute?

Mr. Billingy:     Yes.

Mr. Johnson:     No, I don't have a specific hour and a minute. Class was roughly four and a half hours, so within that time.

Mr. Richtarich:     Okay. There we go.

Mr. Miller:     Sorry, guys. You there?

Mr. Richtarich:     Yeah, we can hear you, Tim.

Mr. Miller:     Okay. Sorry about that. Last thing I heard was the statement "four times," I believe, something along those lines.

Mr. Billingy:     What's that?

Mr. Miller:     The last thing I remember hearing was "four times." Did I miss anything after that?

Mr. Billingy:     No, he did not give any specific number.

Mr. Miller:     Okay. All right. All right, thank you. Please proceed.

Mr. Billingy:     Yes. I had asked if there was any specific time he noticed he was asleep. And if – Mr. Carlton, could you repeat your answer for that?

Mr. Johnson:     I said I didn't have a specific hour and a minute if that's what you were asking.

Mr. Billingy:     Not even one time specific?

Mr. Johnson:     No.

Mr. Billingy:     All right. The reason why I ask is, if you couldn't give me at least one time I could cross reference [inaudible] [01:04:39] if he was up at the time, just – you might have the evidence that he was up. I just need like one – just if you can one specific time.

Mr. Johnson:     I don't have a specific hour and a minute as far as Mr. Besse falling asleep.

Mr. Billingy:     All right. For example, right, was he up around 11:00?

Exhibit 6.6 – Lack of Specific Time in Witness Statement (Mr. Johnson)
Statement does not include a specific time for the alleged incident.

EXHIBIT F

## EMPLOYEE STATEMENT

Name: CARLTON JOHNSON     Date: 6-4-25

SAP#: 0081160

Statement:

On 6-4-25 during 236 ACSES class Mr Eddy Besse was noticed to be sleeping during class. I woke Mr. Besse on multiple occasions but he would fall back asleep after a few minutes. My partner Mr. Ayers made the situation aware to Mr. Ruiz. Mr Besse took the test and did not pass.

Employee Signature: _____

 Outlook

## FW: Craft worker sleeping while at work

**From** Fields, Tyrone <FieldsT@amtrak.com>
**Date** Mon 8/25/2025 8:12 AM
**To** Eisele, Jim <James.Eisele@amtrak.com>

Tyrone Fields
Superintendent 1
646-539-8993

**From:** Newton, Devon W <Devon.Newton@amtrak.com>
**Sent:** Thursday, August 21, 2025 2:50 PM
**To:** Fields, Tyrone <FieldsT@amtrak.com>
**Cc:** Heyward, Judith <HeywarJ@amtrak.com>; Khellawan, Anthony <KhellaA@amtrak.com>; Harris, Rita <HarrisRit@amtrak.com>
**Subject:** Craft worker sleeping while at work

Good afternoon, all, on the morning of 08.09.2025 on train 151 craft worker Eddy was observed sleeping ( his seat was in the reclined position with his head towards the ceiling, his eyes was closed, and his mouth was opened As he was snoring. Several attempts were made to inform him that it was time to release train 151.

Best regards

Foreman Devon Newton

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

Exhibit 7.1 – Devin Newton Statement: No Time and Conflicting Dates Devin Newton's statements do not provide a specific time for the alleged incident. In addition, one statement refers to August 6, while another refers to August 9. These are two different dates, not a minor detail. The inconsistency makes it unclear when the alleged misconduct supposedly occurred and limits the reliability of the statement as a basis for termination.

EXHIBIT D.1

**Fields, Tyrone**

| | |
|---|---|
| **From:** | Newton, Devon W |
| **Sent:** | Tuesday, August 19, 2025 8:10 AM |
| **To:** | Fields, Tyrone |
| **Subject:** | Statement Regarding Performance Concern: Electrical Craft Worker – Train 151 |

Good morning, Tyrone, please see email below.

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Newton, Devon W <Devon.Newton@amtrak.com>
**Sent:** Wednesday, August 6, 2025 5:37:00 AM
**To:** Ruiz, Salvador <RuizS@amtrak.com>; Harris, Rita <HarrisRit@amtrak.com>; Johnson, Sharell <JohnsonS@amtrak.com>
**Cc:** Khellawan, Anthony <KhellaA@amtrak.com>; Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Subject:** Statement Regarding Performance Concern: Electrical Craft Worker – Train 151

Good morning, all, on 08.06.2025, Electrical craft worker Eddy Besse was assigned to service and address all electrical malfunction on Train 151. Car 82753 arrived in SSYD with defective side doors due to a defective MGS box. Rather than prioritizing the necessary repair, Electrical craft worker Eddy chose to rest/sleep during the time allotted for resolving the issue. This decision directly impacted the operational readiness of the equipment and demonstrates a serious lapse in judgment and professionalism.

Timely and effective response to mechanical and electrical issues is critical to ensuring the safe and efficient operation of our trains. Failing to address such issues in a timely manner not only compromises service quality but also places unnecessary risk on crew and passengers.
This behavior is unacceptable and does not align with Amtrak's expectations for craft workers. Immediate corrective action is required, and further instances of neglect or dereliction of duty should result in disciplinary measures.

Exhibit 7.2 – Devin Newton Statement: No Time and Conflicting Dates
Devin Newton's statements do not provide a specific time for the alleged incident. In addition, one statement refers to August 6, while another refers to August 9. These are two different dates, not a minor detail. The inconsistency makes it unclear when the alleged misconduct supposedly occurred and limits the reliability of the statement as a basis for termination.

different times.

Mr. Miller: I see. I see what you mean.

Mr. Billingy: So, this could be any day? So, how do you know it was that day?

Mr. Miller: Are you asking me or?

Mr. Billingy: **[Inaudible] [00:42:05]**

Mr. Miller: Well, you're not asking questions to the witness.

Mr. Billingy: Okay.

Mr. Miller: Mr. Rosales is the witness, not Mr. Richtarich or myself. Now, whoever is in that picture, to me, they're in the attitude of sleep.

Mr. Billingy: Okay. So, you read the statement for Adriana King, right?

Mr. Rosales: Yes.

Mr. Billingy: And in the statement, they said he was asleep at 5:20 a.m., correct?

Mr. Rosales: Yes, at 5:20. At 5:20, she was notified. Yeah. Which means that I'm not sure how long before it happened, but she was notified by it.

Mr. Billingy: Okay, at 5:20, they said he was already asleep. That's what they said that she was notified at that time.

Mr. Rosales: She was notified at that time. So, there's this picture, he texted them at 5:19 a.m. on that day. So, that's like one minute apart. It could be less than a minute.

Mr. Billingy: I'm not aware 'cause I don't work that shift, so what time were they notified? **[Inaudible]** Can I send a picture so you can look at it with the text on whatever with Adriana?

Mr. Rosales: You can send me the picture, but I'm just gonna say Adriana's statement is only gonna say that that's the time that she was notified. And so, just like anything else, everything is gonna be on or about, right? So, like if I told you you told me something at 3:00 p.m., it's gonna be on or about because everybody's clock's gonna be different.

EXHIBIT C

## **EMPLOYEE STATEMENT**

Name: Adriana King      Date: 8/13/25

SAP#: 00821457

Statement:

On the night of 8/12/25 shift 11p-7a Eddy Besse was assigned to work train 79. As he was working 79 he asked me for filters so he can changed them in the coaches at 2:30am. By 3:38am I dropped of filters at the train. Instead of changing the filter Eddy went to train 119 an slept in one of the cars. I stopped by 79 1hour after I dropped off the filters to see if he was done and noticed the box of filters were untouched and Eddy was not on the train. At 5:20am a carman notified me that Eddy was sleeping on 119. I went over to the train and saw him sleeping. I asked him to go over to 79 and change the filters immediately as the train leaves in 40 minutes. He said he was talking the foreman for 119 because he needs things. I told him you were sleeping I was watching you sleep. He says "oh you saw me?" I told him whatever you have to do on 119 can wait 79 needs to be done now so we don't have any delays, I don't understand why you're sleeping. He went and changed the filters. He finished at 5:52am. I released the train at 6:02am. Eddy sleeping at work and not following instructions is a continuous issue we as foreman have struggled with him.

Employee Signature: Adriana King

< 11



**Devon** ›

Train on 21 west end door will open will not close

most west car

oreman's office

Exhibit 9 – 5:19 a.m. Work Activity Shows active work and request for materials immediately prior to the alleged time of incident.

Wed, Aug 13 at 05:19

🔲 10 Photos



Need 8 filters for two cars Chanel 1 on refrigerator reading 52 degrees

Correction channel 4 is reading 52 degrees*

Give me a call

+    Text Message · SMS    🎤

Exhibit 10.1 – Lack of Notice (June 4 Charge)
No clear notice was provided prior to the charge being addressed.

97666_E_ Beese 330_25NY HEARING AUDIO
Mr. Miller, Mr. Besse, Mr. Richtarich, Mr. Johnson, Mr. Negron, Mr. Billingy, Mr. Rosales

9

|  |  |
|---|---|
|  | simple question. Were you notified to report there today? |
| Mr. Billingy: | **[Inaudible] [00:20:04]**. |
| Mr. Besse: | I was notified to report here today. |
| Mr. Miller: | Thank you. Okay. Were you notified that you could be accompanied by a representative of your own choosing? |
| Mr. Besse: | Yes. |
| Mr. Miller: | Are you accompanied by such a representative? |
| Mr. Besse: | Yes. |
| Mr. Miller: | Please identify that person, for the record. |
| Mr. Besse: | He's to my left. His name is Jesroy. He's an electrician **[inaudible]**. |
| Mr. Miller: | Okay. Do you understand that you may present or have presented on your behalf any pertinent evidence? |
| Mr. Besse: | I understand that it can be emailed, yes. |
| Mr. Miller: | Are you willing to proceed? |
| Mr. Besse: | Yes. |
| Mr. Miller: | Thank you. At this time, I'm requesting that the charging officer call his first witness. All other witnesses are now excused until such time as you are called to testify. Please remain available for examination. And everyone, please, you are each instructed not to discuss this case outside of the meeting. Okay. Mr. Richtarich, would the carrier like to call their first witness? |
| Mr. Richtarich: | Yes, thank you. The carrier calls Mr. David Rosales, please. |
| Mr. Miller: | Okay. Thank you. Okay. I'm sorry. Mr. Johnson, if you could please drop off. And then Mr. Richtarich could be reaching out to you. Okay. For the record, Mr. Johnson has left the meeting. Okay, please proceed, Mr. Richtarich. |
| Mr. Richtarich: | Thank you. Good morning, Mr. Rosales. I appreciate you joining us today. Can I just start off with your job position and a high-level overview of your responsibilities, sir? I think they're frozen. |

97666_E_ Beese 330_25NY HEARING AUDIO

8

Mr. Miller, Mr. Besse, Mr. Richtarich, Mr. Johnson, Mr. Negron, Mr. Billingy, Mr. Rosales

---

room that you're in right now, today for this investigation? You're saying you didn't? And if that's the case, then how are you there?

Mr. Besse: So, I just wanna be clear. You're talking about me being present here today. Was I notified to be present here today in this room in front of you right now?

Mr. Miller: Exactly.

Mr. Besse: For this situation.

Mr. Miller: Exactly.

Mr. Besse: No.

Mr. Miller: Okay, Mr. Besse, I'm asking you simply – then how did you know to report there today?

Mr. Besse: I got an email to report for a situation on August – for two situations on August 13th and a situation on August 6th. There was no talk about the situation on June 4th for today. I can show you the email. You can read the email yourself. If you want, I can show you exactly what I was sent for today.

Mr. Miller: Mr. Besse, I find that your behavior is completely out of line, and you're being difficult.

Mr. Besse: My apologies. I have no intention of this.

Mr. Miller: How did you know to report there today?

Mr. Besse: I was emailed and told to come in today for trial.

Mr. Miller: So, you were notified.

Mr. Besse: I was notified to be here today for trial.

Mr. Miller: Then why did you say that you weren't?

Mr. Besse: I wasn't notified that –

Mr. Miller: We're not talking about any other day. We're not talking about any other day. We're here for what transpired allegedly on June 4th. But were you notified to – I mean, I've never had this much difficulty getting a simple yes or no out of an employee. It's a

---

Exhibit 10.3 – Lack of Notice (June 4 Charge)
No clear notice was provided prior to the charge being addressed.

97666_E_ Beese 330_25NY HEARING AUDIO
Mr. Miller, Mr. Besse, Mr. Richtarich, Mr. Johnson, Mr. Negron, Mr. Billingy, Mr. Rosales

7

| | |
|---|---|
| Mr. Miller: | No – no, no. I'm asking you were you notified to report there today for this – |
| Mr. Besse: | I was notified to be here for two incidents on August 13 and an incident on August 6, all being spoken about today. |
| Mr. Miller: | All right. I'm confused. August 13th, August 6th? |
| Mr. Besse: | Yeah, that's what the email said. I was here for a few charges that took place on August 13 and then a charge that took place on August 6. |
| Mr. Miller: | Okay. My question is this. Were you notified to report there today for this particular investigation? |
| Mr. Besse: | No, this was blindsided with this. Never was informed about this. **[Inaudible] [00:17:06]** for this today. |
| Mr. Miller: | All right. Well – |
| Mr. Besse: | And I've been emailing – I'm sorry. |
| Mr. Miller: | Well – |
| Mr. Besse: | Yeah, I've been emailing Christopher. And in none of the recent emails for what I was supposed to come in here for today is it listed that we were gonna be talking about a incident on June 4th. That is not to my knowledge. I have proof of that email as well, if you want me to email it to you. And it'll tell you exactly what I understood. |
| Mr. Miller: | Okay. But you are physically there, so somebody had to inform you to report there today for this investigation. Am I correct? |
| Mr. Besse: | No. |
| Mr. Miller: | No? |
| Mr. Besse: | Well, I was informed about August 13, two situations on August 13 and a situation from August 6, not this situation. This, I have no idea about this being talked about today. I just found out while being on Zoom. |
| Mr. Miller: | Okay. Look, Mr. Besse, could you just please simply answer the question. I'm asking you were you notified to report there, the |

Exhibit 11 – Unidentified Photograph
Parties acknowledged they could not definitively identify me in the photograph used as evidence.

97666_E_ Beese 452_25NY HEARING AUDIO
Mr. Miller, Mr. Beese, Mr. Richtarich, Ms. Jonson, Mr. Negron, Mr. Rosales, Mr. Billingy

8

| | |
|---|---|
| Mr. Rosales: | According to the statement. I wasn't given a copy of the statement, but according to looking over the statement. |
| Mr. Richtarich: | Thanks very much, sir. I'm gonna share another document, sir. Bear with me one moment. Are you able to see that, Mr. Rosales? |
| Mr. Rosales: | Yes, I can. |
| Mr. Richtarich: | Are you familiar with this photo, sir? |
| Mr. Rosales: | Yes. It's a photo of the investigation. |
| Mr. Richtarich: | And what does this photo purport to show? |
| Mr. Rosales: | The photo purports somebody who looks like they're sleeping inside one of our cars. |
| Mr. Richtarich: | Okay. Are you able to identify that as Mr. Beese? Mr. Beese, excuse me. My apologies on the mispronunciation, sir. |
| Mr. Rosales: | I couldn't necessarily. I can see that it's someone. I can't necessarily say who it is. |
| Mr. Richtarich: | Okay. Thank you very much. I'd like to enter this in as a Carrier's Exhibit, please. |
| Mr. Miller: | Okay, let's see. Okay, so the document will be titled Photo of Event, and it will be the Carrier's Exhibit E, as in Echo. Thank you. |
| Mr. Richtarich: | Thank you. Bear with me one moment. And I shared another photograph. Sir, have you seen this photograph before? |
| Mr. Rosales: | Yes, I have. Also part of the investigation. |
| Mr. Richtarich: | Thank you. And what does this photograph purport to show? |
| Mr. Rosales: | This photograph purports someone who looks to be sleeping inside an ARC. |
| Mr. Richtarich: | Thank you. I'd like to enter this in as a Carrier's Exhibit. |
| Mr. Miller: | All right, bear with me one second. All right, so, this document will be titled "Photo of Event No. 2," and it will be the Carrier's Exhibit F as in Foxtrot. Thank you. |



## Fw: Sleep Apnea email notifying management

**Billingy, Jesroy B**     Nov 8 ⭐
To: Ebesse96@yahoo.com & 1 more ∧

From:
Billingy, Jesroy B
Jesroy.Billingy@amtrak.com

To:
Ebesse96@yahoo.com
ibew817@ibew817.org

Date:
Nov 8 at 17:10

Get Outlook for iOS

---

**From:** Billingy, Jesroy B
**Sent:** Wednesday, September 3, 2025 9:52:35 AM
**To:** Miller, Timothy M <MillerTM@amtrak.com>
**Subject:** Sleep Apnea email notifying management

Get Outlook for iOS

| Delete | Reply | Reply All | Forward | More |



Exhibit 12.3 – Incomplete Evidence Inclusion
Only a portion of submitted materials appears in the hearing record.

## 2025 HEARING/INVESTIGATION RECORD OF EXHIBITS
## EMPLOYEE EXHIBITS

**NAME OF CASE: Eddy Besse**

**DATE: September 3, 2025**

**FILE ODI NUMBER: 330.25NY**

**LOCATION: NYP-VIRTUAL**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | Notice to Management |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

**Exhibit 12.4 – Incomplete Evidence Inclusion**
**Only a portion of submitted materials appears in the hearing record.**

**2025 HEARING/INVESTIGATION RECORD OF EXHIBITS**
**EMPLOYEE EXHIBITS**

NAME OF CASE: Eddy Besse                DATE: September 3, 2025

FILE ODI NUMBER: 452.25NY              LOCATION: NYP-VIRTUAL

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

**Exhibit 13.1 – Postponement Evidence**
**Documentation showing the matter had been previously postponed.**

## Fw: Charge letter- Besse

 **Besse, Eddy N**
To: Me ⌄    @ 8/21/25 ☆

Get Outlook for iOS

**From:** Bryant, Kaheem I
<Kaheem.Bryant@amtrak.com>
**Sent:** Thursday, July 17, 2025 16:39
**To:** Cullin, Terrence D
<Terrence.Cullin@amtrak.com>; Besse, Eddy N
<Eddy.Besse@amtrak.com>; ODI National
<ODINational@Amtrak.com>
**Cc:** Lukasiewicz, John
<John.Lukasiewicz@amtrak.com>; Fields, Tyrone
<FieldsT@amtrak.com>; Ruiz, Salvador
<RuizS@amtrak.com>; Clinton, Patricia M
<Patricia.Clinton@amtrak.com>; Bulldis, Anthony J
<BulldiA@amtrak.com>; Disciplinary Hearing
Advocacy Team <DHATeam@Amtrak.com>;
Richtarich, Christopher T
<Christopher.Richtarich@amtrak.com>; Allison II,
Richard W <Richard.Allison.II@amtrak.com>
**Subject:** Re: Charge letter- Besse

He didn't sign the waiver. I'll let Eddy know it's been
postponed. Please update me on the next date.

---

**From:** Cullin, Terrence D <Terrence.Cullin@amtrak.com>
**Sent:** Thursday, July 17, 2025 4:03 PM
**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>; Bryant,
Kaheem I <Kaheem.Bryant@amtrak.com>; ODI National
<ODINational@Amtrak.com>
**Cc:** Lukasiewicz, John <John.Lukasiewicz@amtrak.com>;
Fields, Tyrone <FieldsT@amtrak.com> Ruiz, Salvador
<RuizS@amtrak.com>; Clinton, Patricia M
<Patricia.Clinton@amtrak.com>; Bulldis, Anthony J
<BulldiA@amtrak.com>; ODI National
<ODINational@Amtrak.com>; Disciplinary Hearing


Delete    Reply    Forward    Move    More

**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>; Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>; ODI National <ODINational@Amtrak.com>
**Cc:** Lukasiewicz, John <John.Lukasiewicz@amtrak.com>; Fields, Tyrone <FieldsT@amtrak.com>; Ruiz, Salvador <RuizS@amtrak.com>; Clinton, Patricia M <Patricia.Clinton@amtrak.com>; Bulldis, Anthony J <BulldiA@amtrak.com>; ODI National <ODINational@Amtrak.com>; Disciplinary Hearing Advocacy Team <DHATeam@Amtrak.com>; Richtarich, Christopher T <Christopher.Richtarich@amtrak.com>; Allison II, Richard W <Richard.Allison.II@amtrak.com>
**Subject:** RE: Charge letter- Besse

All, as a reminder, this case (Mr. Besse ODI#330.25NY) is still set for a hearing on the 22nd, however the Carrier will be postponing. If the waiver has been signed, please send me a copy of the waiver with signatures so I can close it out with ODI.

All the best,
**Terry D. Cullin**
*Lead Disciplinary Hearing Advocate*
Email: Terrence.Cullin@Amtrak.com | Mobile: (610)-850-5276



**AMTRAK**®

**From:** Cullin, Terrence D
**Sent:** Tuesday, July 1, 2025 9:05 AM
**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>; Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>; ODI National <ODINational@Amtrak.com>
**Cc:** Lukasiewicz, John <John.Lukasiewicz@amtrak.com>; Fields, Tyrone <FieldsT@amtrak.com>; Ruiz, Salvador <RuizS@amtrak.com>; Clinton, Patricia M <Patricia.Clinton@amtrak.com>; Bulldis, Anthony J <BulldiA@amtrak.com>
**Subject:** RE: Charge letter- Besse

It has been brought to my attention that I forgot to correct the hearing date. In the original I sent, it appears the intent and hearing dates should be the same. Please note the date of ... on ... 25 at ... AM in SSY. The attached corrected charge letter will be the controlling document in this matter. Thank you all, and my apologies for the error



**Subject:** RE: Charge letter- Besse

It has been brought to my attention that I forgot to correct the hearing date. In the original I sent, it appears the intent and hearing dates would be the same day. Please note the date of the Formal Investigation is on 7/22/25 at 10 AM in SSY. The attached corrected charge letter will be the controlling document in this matter. Thank you all, and my apologies for the error

All the best,
**Terry D. Cullin**
*Lead Disciplinary Hearing Advocate*
Email: Terrence.Cullin@Amtrak.com | Mobile: (610)-850-5276



**From:** Cullin, Terrence D
**Sent:** Tuesday, July 1, 2025 7:53 AM
**To:** Besse, Eddy N <Eddy.Besse@amtrak.com>; Bryant, Kaheem I <Kaheem.Bryant@amtrak.com>
**Cc:** Lukasiewicz, John <John.Lukasiewicz@amtrak.com>; Fields, Tyrone <FieldsT@amtrak.com>; Ruiz, Salvador <RuizS@amtrak.com>; Clinton, Patricia M <Patricia.Clinton@amtrak.com>; Bulldis, Anthony J <BulldiA@amtrak.com>
**Subject:** Charge letter- Besse

Please find attached a Notice of Formal Investigation. Please read this document carefully. If you have any questions, please direct all inquiries to your duly accredited representative. The intent meeting for this matter shall be arranged by your local management on the date and time specified.

All the best,
**Terry D. Cullin**
*Lead Disciplinary Hearing Advocate*
Email: Terrence.Cullin@Amtrak.com | Mobile: (610)-850-5276







Exhibit 14.3 Text Message from Tiffany Regarding Sleeping Practices and Discipline Among Amtrak Employees



**13:18**

Tiffany

But didn't you take d-rails down after 12:30pm?

Either way I'm almost don't working track 30

Unless you want me to stop working track 30 nd put on power on track 28

Let me know

30 track is train 49 that does not leave until 2:40 PM 28 track train 19 you should have worked on 1st & reached out to me if there was an issue so I could have gotten you some assistance and I never took down derails I just informed everyone the motor would be shopped

Edited

Ok

Power up now or finish working track 30?

Don't put 19 on power they're coming to shop the motor

Exhibit 14.2 Text Message from Tiffany Regarding Sleeping Practices and Discipline Among Amtrak Employees

iMessage



Exhibit 14.4 Text Message from Tiffany Regarding Sleeping Practices and Discipline Among Amtrak Employees

# Exhibit 14.5 Tiffany's Written Instruction Not to Place Train on Power and Subsequent Contradictory Report

On May 19, 2025, I reported concerns involving Tiffany to management. Approximately eight weeks later, on July 14, 2025, Tiffany contacted me regarding a train that had not been placed on power. I explained that I had been addressing a train-motor issue but offered to immediately place the other train on power. Tiffany instructed me by text not to place the train on power because the trains were going to be separated and repositioned. I followed her instruction. The following day, the General Foreman questioned me after being informed that I had failed to place the train on power. I explained that Tiffany had specifically instructed me not to do so. The attached text messages document the instruction I received and support my contention that the later report to management gave a misleading account of my conduct. Given the prior May 19, 2025 report, the timing and contradictory account support an inference that this incident may have been retaliatory or intended to create an unjustified performance issue against me.

| Craft | Name | 3/3/2025 | 3/10/2025 | Week of 3/17 and 3/24 | 3/31/2025 | 4/7/2025 | 5/5/2025 | 7/1/2025 | 8/1/2025 | 9/2/2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| Carman Journeyman | Eddy Besse | NYS Training Room | NYS Training Room | Electrician Skills-up/ HAR | Yard 1st Shift | Eng House 1st Shift | Carshop 1st Shift 236 Certification | Eng HouseYard 2nd Shift | Eng HouseYard 3rd Shift | Bid Job |
| | | | | | 236 Certification | | | | | |
| Moynihan Train Hall - 421 8th Ave. New York, NY 10199 - Room 2188 NYS 39-29 Honeywell St, LIC, NY 11101 - Floor 2 Dawn Rosales * 212-630-7061 | | | | | | | | | Amtrak | |
| Amtrak Training Center 4001 Vandever Ave. Wilmington DE * Scott Crawford 610-883-3819 Training Center 4th & Chestnut Street, Harrisburg, PA 17101 * Justin Tienter 717-599-4243 and Travis Clapper 717-810-9296 | | | | | | | | | | |

| MENTORS | | |
|---|---|---|
| NAME | LOCATION | SHIFT |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Exhibit 15.1 Orientation Shift Schedule Showing Multiple First-, Second-, and Third- Shift Assignments at SunnySide Amtrak Yard Location

## Exhibit 15.2 Orientation Shift Schedule Showing Multiple First-, Second-, and Third-Shift Assignments at SunnySide Amtrak Yard Location

This exhibit is a photograph of the shift schedule provided during my Amtrak orientation, showing that employees could be assigned to multiple first-, second-, and third-shift schedules at different locations throughout the yard. During orientation, I was scheduled to rotate through the different shifts and work areas so that I could become familiar with the yard's operations. I was initially assigned to first shift, but Amtrak later eliminated or changed that assignment and transferred me to third shift without discussing the change with me, asking whether the overnight schedule would aggravate my diagnosed sleep disorder, or engaging with me concerning a possible accommodation. The transfer occurred approximately two weeks after I made written reports on or around May 19, 2025 concerning the conduct of three members of management, and those reports were never meaningfully addressed. This exhibit is offered to provide context showing that Amtrak operated numerous shifts and assignments and that overnight work was not the yard's only available scheduling structure. The exhibit does not, by itself, establish that every listed position was vacant on the exact date of my transfer, but it supports my contention that Amtrak had multiple scheduling arrangements it could have discussed with me before automatically placing me on third shift despite having notice of my medical condition.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/26/2026

**To:** Mr. Eddy N. Besse
146-11 225th St Fl 2
Springfield Gardens, NY 11413
Charge No: 520-2026-01346

EEOC Representative and email:  SILVIA DENG-BATISTA
INVESTIGATOR
SILVIA.DENG-BATISTA@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2026-01346.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
06/26/2026
Arlean Nieto
Acting District Director

**Cc:**
Rokisha Caldwell
Amtrak
1 MASSACHUSETTS AVE NW
Washington, DC 20001

Mina Wood
Jackson Lewis P.C.
666 Third Ave.
New York, NY 10017

NA NA
38-38 43rd st
Long Is City, NY 11101


Please retain this Notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at
https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 520-2026-01346 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 520-2026-01346 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

- [ ] An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- [ ] An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- [ ] "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- [ ] The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- [ ] A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.